OPINION OF THE COURT
Meyer, J.
Arbitration is required, under both the member-member and the member-nonmember clauses of the arbitration provision of the New York Stock Exchange constitution, of a dispute concerning the ownership of shares in a member corporation obtained by, and held in the name of, an allied member before his membership lapsed, where the parties thereafter demanding arbitration, though not members at any time that the shareholder was, have since become allied members, and acquisition of the shares was, at least in part, for the purpose of affecting the management and control of the member corporation by whom all of the parties to the arbitration demand were employed. The order of the Appellate Division should, therefore, be reversed.
In May, 1974, appellants Koenig and Weisglass orally agreed with respondent Dunay to establish an unincorporated brokerage firm and divide the profits and losses equally. The resulting joint venture affiliated in May, 1974 with respondent Ladenburg, Thalmann & Co., Inc., an already established brokerage firm and a, member of the New York Stock Exchange. Dunay became the president of *29 Ladenburg and an allied member of the Exchange. Allied membership is available to any principal executive officer of a member corporation who agrees to abide by the Exchange constitution (New York Stock Exchange Constitution, art 1, § 3, subd [d]).
In the fall of 1975, Dunay purchased in his own name 13,500 shares of Ladenburg stock which, through the declaration of a dividend, subsequently increased to 16,200 shares. A written memorandum of understanding, addressed by Dunay to Koenig and Weisglass on October 15, 1975 and accepted by them, provided: “In view of the fact that you and we share equally in the monies earned by the Institutional Sales Department of Ladenburg, Thalmann & Co. Inc. allocated to our group, this will confirm that I intend to share equally with you any gain realized upon any sale of these shares (it being understood that the timing and terms of any such sale shall be in my sole discretion) on condition that at the time of any such sale you and I continue to be employed by Ladenburg and that the arrangements by and among us are substantially the same at such time.” An October, 1977 agreement entered into by shareholders of Ladenburg, and signed by Dunay and Weisglass, but not by Koenig, restricted sale or transfer of Ladenburg shares and recited that it was intended “to assure the continued orderly management and growth” of the corporation.
Dunay’s employment with Ladenburg and his allied membership in the Exchange ended in May, 1979. He then instituted an action against Koenig, Weisglass and others, for an accounting of the joint venture’s assets. That action is still pending in Supreme Court. One month later, in June, 1979, Dunay tendered more than 21,000 Ladenburg shares to the corporation for repurchase in accordance with the shareholders agreement. Koenig and Weisglass, however, informed Ladenburg that 16,200 out of the 21,000 shares had been held by Dunay on behalf of the joint venture and requested an adjustment of corporate records to show ownership by them of two thirds of the stock so held, or 10,800 shares.
After Ladenburg refused to comply with that request, Koenig and Weisglass, who had become allied members of *30 the Exchange after Dunay’s membership terminated, demanded arbitration of their claim against Dunay and Ladenburg pursuant to the arbitration provision contained in the Exchange constitution. Specifically, they alleged that they had been misled into signing the October 15, 1975 memorandum, that the memorandum did not reflect the understanding of the parties that they shared equally in the stock, and that the stock had been purchased in Dunay’s name merely as an administrative convenience.
Dunay then initiated this proceeding to stay arbitration. Koenig and Weisglass submitted a cross application to compel arbitration. Ladenburg took no position. Supreme Court dismissed Dunay’s application, granted the application of Koenig and Weisglass and directed all parties to proceed to arbitration. The Appellate Division unanimously reversed and granted the stay. Koenig and Weisglass appealed as of right to our court. We, in turn, reverse the Appellate Division and reinstate Supreme Court’s order directing the parties to arbitrate.
The sole issue before us concerns the right of Koenig and Weisglass to demand arbitration under the New York Stock Exchange constitution,* section 1 of article VIII of which provides: “Any controversy between parties who are members, allied members * * * or member corporations shall, at the instance of any such party, and any controversy between a non-member and a member or allied member * * * or member corporation arising out of the business of such member, allied member * * * or member corporation * * * shall, at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Directors.” Under the principles declared in Crawford v Merrill Lynch, Pierce, Fenner & Smith (35 NY2d 291, 300) and Matter of Willard Alexander, Inc. (Glasser) (31 NY2d 270), such a clause in the Exchange constitution constitutes a written agreement *31 to submit to arbitration before the Exchange. Moreover, its “any controversy” language characterizes it as a broad rather than a limited arbitration clause (Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], 42 NY2d 509, 514; Matter of Weinrott [Carp], 32 NY2d 190, 199). Although those words are narrowed in scope as to member-nonmember arbitration by the additional requirement that the controversy be one “arising out of the business of” the member, we conclude, for the reasons hereafter stated that arbitration of the instant controversy is required whichever provision is applied.
I
Dunay contends, and the Appellate Division agreed, that the “are members” language of the Exchange arbitration provision requires a period of mutual membership to invoke member-member arbitration. If this were correct, of course, the present dispute would not be subject to arbitration as a dispute between members because it is uncontested that Koenig and Weisglass, although allied Exchange members at the time they demanded arbitration, did not become allied members until after Dunay’s allied membership had lapsed.
In support of his position, Dunay admits that when he joined the Exchange, he agreed to arbitrate any controversy with persons who were already members or who would become members during the period of his membership. He argues, however, that when his membership terminated he, in effect, “revoked” this agreement to arbitrate any controversy with persons who had not yet attained Exchange membership but would in the future do so. Consequently, as to persons who joined the Exchange after he left, Dunay submits that only the narrower member-nonmember clause of the arbitration provision could arguably apply.
We reject Dunay’s position. Nothing in the arbitration provision limits Dunay’s agreement to arbitrate any controversy with members to those who attain membership contemporaneously with Dunay. To construe the provision to impose such a limitation would be inconsistent with the fact that Dunay had no more power to approve or veto Exchange *32 membership when he was himself a member than after his membership had lapsed. It would also be inconsistent with both the Exchange policy, as evidenced by the broad arbitration provision drafted into its constitution, and our policy (see Mobil Oil Indonesia v Asamera Oil [Indonesia], 43 NY2d 276, 281-282) favoring arbitration, and inconsistent, as well, with Coenen v Pressprich & Co. (453 F2d 1209, cert den 406 US 949).
In Coenen, plaintiff charged defendants with conspiracy to force him to sell stock at an unconscionably low price under a prior agreement, by refusing to allow him to transfer, rather than sell, the stock. The agreement had been entered into in 1968, and the forced sale took place in September, 1970, at a time when plaintiff' was not a member of the Exchange. Plaintiff applied for and became a member in December, 1970, and filed suit. One of the defendants, a member of the Exchange, then sought arbitration of the controversy. The Court of Appeals for the Second Circuit, interpreting the very same arbitration provisions at issue here, held that the claim was arbitrable as a member controversy under the Exchange constitution: “[Plaintiff’s] argument that the New York Stock Exchange arbitration clause only applies to ‘future’ disputes that arise after both parties have become members of the Exchange need not detain us long. As an implementation of the statutory policy of self-regulation, we think the clause is clear on its face. It reads ‘any controversy’ between members. And that is precisely what it must mean if controversies between members are to be kept out of the courts. Had those who drafted the clause intended otherwise they doubtless would have used language plainly stating that ‘any future controversy’ or any controversy between members ‘arising after both parties to the dispute have become’ members” (453 F2d, at p1212).
Put another way, Dunay concedes, as he must, that his obligations under the- arbitration provision survived the termination of his Exchange membership with respect to business engaged in while a member (see Muh v Newburger, Loeb & Co., 540 F2d 970, 972-973; Isaacson v Hayden, Stone, 319 F Supp 929, 930; Osborne & Thurlow v Hirsch *33 & Co., 10 Misc 2d 225, 226). We hold that what survived included Dunay’s obligation to arbitrate any controversy with any future member with respect to their business dealings undertaken while Dunay was a member, whether or not such future membership was obtained before Dunay’s membership had terminated. In thus rejecting the “mutality of membership” theory relied upon by the Appellate Division, we note that Isaacson v Hayden, Stone (319 F Supp 929, supra), cited by that court to support that theory, is inapposite despite some factual similarities.
In that case, one Isaacson had purchased an interest in a brokerage firm during a period in which he was a corporate officer of that firm and an allied member of the Exchange. After his resignation, however, Isaacson sought to have the corporation repurchase those shares. Although he had agreed, as an allied member of the Exchange, to submit any controversy to arbitration, he maintained that he did not have to arbitrate because the specific subject of the action— the supposed obligation of the corporation to repurchase the shares — did not arise until after he ceased being an allied member. After noting that the corporation’s Exchange membership had also lapsed since Isaacson’s demand for repurchase had been made, the court rejected Isaacson’s position and reasoned: “[T]he controversy flows from and is predicated upon the business relationship between the parties which arose during their mutual membership in the Exchange. If the obligation then undertaken by the defendant persists for the purpose of enforcement after termination of those memberships, it also persists as a membership obligation subject to the Constitution of the Exchange. * * * The fact that the plaintiff commenced this action after he ceased to be a member of the Exchange does not impair or destroy the obligation to arbitrate his controversies with the defendant concerning their business relationship assumed by him while he was a member of the Exchange” (319 F Supp, at p 930).
Thus, in Isaacson, unlike the present case, both parties’ membership had lapsed. It was in that context that the court, holding that arbitration was still required, noted the parties’ prior “mutual membership” in the Exchange. That *34 factual reference, however, had no relevance to the court’s legal conclusion that Isaacson’s obligation to arbitrate arose from business activity undertaken while he was a member of the Exchange.
II
The result is the same even if this dispute is governed by the member-nonmember clause of the Exchange constitution, for the controversy is one “arising out of the business” of Dunay. Dunay’s contrary argument is that the controversy arises solely out of his position as a joint venturer. That argument, however, ignores the fact that it was for business reasons that the joint venture became closely associated with Ladenburg and Dunay assumed Ladenburg’s presidency. As president of a member corporation, Dunay became an allied Exchange member. While president and while an allied member, Dunay purchased closely held Ladenburg shares and agreed to restrictions placed upon their sale or transfer in the interest of assuring the “continued orderly management and growth of the corporation.” On these uncontested facts, we find it impossible to conclude, as did the Appellate Division, that the present dispute over stock ownership does not arise from Dunay’s business as president of Ladenburg. To the contrary, Dunay held Ladenburg stock, not as an ordinary investment vehicle for himself or for the joint venture, but in close connection with his efforts on behalf of himself and the joint venture to have input into the management and control over Laden-burg (see Kelleher v Reich, Fed Sec L Rep [CCH], par 98.-040 [SDNY, June 19, 1981]). That being the case, he held the stock, at least in part, in his capacity as manager and controller of Ladenburg — that is, as its president — and not exclusively in his capacity as a joint venturer investing joint venture funds.
Accordingly, for the reasons expressed above, the order of the Appellate Division should be reversed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, with costs, and the judgment of Supreme Court, New York County, reinstated.

 The shareholders agreement also contained a provision requiring arbitration of “[a]ny controversy or claim arising out of or in connection with this [a]greement” in accordance with Exchange arbitration procedures. Because the arbitration demand made no reference to the shareholders agreement, we do not consider its arbitration provision further.