PAINE, WEBBER, JACKSON & CURTIS, INC., Plaintiff-Appellee,

v.

The CHASE MANHATTAN BANK, N.A. and In-Suk Oh, Defendants-Appellants.

No. 451, Docket 83–7581.

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1983.

Decided Feb. 14, 1984.

Gerald Harris, New York City (Rubin Baum Levin Constant & Friedman, New York City, on the brief), for plaintiff-appellee.

Joseph Angland, New York City (Robert C. Myers, Thomas R. DeRosa, and Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for defendants-appellants.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge.

This is an appeal from an order entered June 13, 1983 in the Southern District of New York, Robert J. Ward, District Judge,

denying defendants' motion, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (1982), for an order staying all proceedings in the underlying action pending arbitration in accordance with the Constitution and Rules of the New York Stock Exchange (NYSE).

The narrow question presented is whether the district court correctly held that non-members of the NYSE cannot compel a member of the NYSE to submit to NYSE arbitration a controversy not arising out of the exchange-related business of the member. We affirm.

## I.

Paine, Webber, Jackson & Curtis, Inc. (Paine Webber), a broker-dealer and a member of the NYSE, commenced this action on May 5, 1982 against the Chase Manhattan Bank, N.A. (Chase) and In-Suk Oh (Oh), a former Vice-President of Chase, alleging six causes of action and demanding compensatory damages of approximately $1.5 million. Three of the six causes of action alleged violations of federal statutes: Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder; Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982); and Section 2(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)–(d) (1982). The three remaining causes of action asserted pendent state claims: alleged violation of Section 352–c of the General Business Law, N.Y.Gen.Bus.Law § 352–c (McKinney 1968 & Supp.1983); alleged common law fraud; and alleged common law negligent misrepresentation.

The facts alleged in the complaint may be summarized briefly to the extent relevant to the narrow issue on this appeal.[1]

In October 1978, four individuals agreed to form an Illinois general partnership to be known as Sheridan Associates (Sheridan). The business of Sheridan was to include trading in government and government-backed securities. In November 1978, the four partners agreed that they would invest $5 million in equity capital in order to attract the necessary outside financing. They further agreed that, upon the issuance of a certified financial statement for the new partnership, they would withdraw up to $3 million of the initial capitalization and would operate the business with only $2 million paid-in capital.

On November 14, 1978, two individuals from Sheridan met with Oh and another Chase officer to discuss the possibility of Sheridan's obtaining financing from Chase. The Sheridan representatives disclosed to Chase their intention not to maintain the $5 million paid-in capital once the financial statements were certified. Chase eventually decided not to provide Sheridan the financial help it requested but did agree to help Sheridan obtain the financing elsewhere.

The Sheridan partnership agreement was signed on or about December 13, 1978. The financial statements through December 15, 1978 were certified by an accounting firm on December 29, 1978. Even before the certification was made, the $3 million was withdrawn from Sheridan by its partners.

Sheridan then approached Paine Webber in late January or early February 1979 to obtain a $50 million credit line and to urge Paine Webber to trade government securities with Sheridan. As part of the process of verifying the information furnished by Sheridan, Paine Webber requested the Morgan Guaranty Trust Company (Morgan) to conduct a credit check of Sheridan. In due course, a representative of Morgan called Oh at Chase and sought information about the creditworthiness of Sheridan and its partners. Oh gave a positive recommendation concerning Sheridan.

The crux of the underlying action is Paine Webber's claim that Oh failed to disclose both his knowledge of the Sheridan

---

[1]. Since Chase's answer to the complaint, filed June 21, 1982, denied the material allegations of the complaint and asserted seven affirmative defenses, we emphasize that our summary of the facts necessarily is based on the complaint. In view of the posture of the case, there has been no opportunity to adjudicate any of the factual allegations.

partners' alleged fraudulent scheme to mislead investors and the fact that Chase had chosen not to extend credit to Sheridan. Paine Webber contends that it relied upon the information furnished by Oh and Chase in extending credit to and in trading government securities with Sheridan. When Sheridan eventually declared itself bankrupt, Paine Webber lost approximately $1.5 million. Paine Webber claims that Chase is jointly and severally liable with Oh for Paine Webber's loss because Chase had supervisory control over Oh and because Oh was acting within the scope of his employment by Chase.

██ On June 21, 1982, Chase filed its answer consisting of a denial of the material allegations of the complaint and the assertion of seven affirmative defenses. In a letter to Paine Webber dated June 25, 1982, Chase demanded arbitration. In a letter to Paine Webber dated July 2, 1982, Oh likewise demanded arbitration. Paine Webber refused to submit to arbitration. On July 7, 1982, Chase and Oh moved, pursuant to 9 U.S.C. § 3, for an order staying all proceedings and discovery pending arbitration. In an opinion dated June 13, 1983, Judge Ward denied defendants' motion for a stay and set a schedule for completion of discovery and the filing of a pre-trial order. This appeal followed.[2]

## II.

The sole issue on this appeal is whether defendants, neither of which are members of the NYSE, can compel Paine Webber, which is a NYSE member, to submit its claims against defendants to NYSE arbitration.

A good starting point is the provision of the Federal Arbitration Act pursuant to which defendants seek to compel arbitration:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

9 U.S.C. § 3 (1982).

Defendants make no claim that they have an agreement with Paine Webber requiring the submission to arbitration of any disputes they have with Paine Webber. Rather, they point to the Constitution and Rules of the NYSE, which require NYSE members to submit to arbitration any controversies with non-members arising out of the member's business.[3]

The district court denied defendants' motion for a stay on the ground that, as far as could be gleaned from the facts of the dispute, the parties had not indicated an intention to be bound by the NYSE arbitration provisions. The court observed that

---

**2.** An order denying a stay pending arbitration is appealable under 28 U.S.C. § 1292(a) (1976) as an order refusing an interlocutory injunction only when, as here, the complaint seeks legal, as opposed to equitable, relief. *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 695 (2 Cir.1968).

**3.** Article VIII of the NYSE Constitution in relevant part provides:

"Any controversy ... between a non-member and a member ... arising out of the business of such member ... shall at the instance of any such party, be submitted for arbitration in accordance with the provisions of the Constitution and the Rules of the Board of Directors."

N.Y.S.E. Constitution, Article VIII, § 1, 2 N.Y. S.E. Guide (CCH) ¶ 1351.

Rule 600(a) of the NYSE Rules in relevant part provides:

"(a) Any dispute, claim or controversy between a customer or non-member and a member ... arising in connection with the business of such member ... shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc., ... upon the demand of the customer or non-member."

N.Y.S.E. Rule 600(a), 2 N.Y.S.E. Guide (CCH) ¶ 2600.

the arbitration provision for member-non-member disputes had been applied only to claims arising out of a purchase and sale of securities transaction between the litigants, in which the purchase and sale agreement incorporated by reference the NYSE arbitration provisions. Since no such agreement was involved in the instant dispute, the court held that the NYSE arbitration provisions were inapplicable and that, in the absence of any other agreement between the parties requiring arbitration, Paine Webber could not be compelled to arbitrate its claims.

■ While we agree with the result reached by the district court, we do not subscribe to its analysis. In particular, we believe that the arbitration provisions of the NYSE Constitution and Rules are sufficient in and of themselves to compel arbitration of covered disputes under § 3, whether or not they are incorporated in a purchase and sale agreement. *Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838, 841 (2 Cir.1971). *Axelrod* does not stand for the narrow proposition attributed to it by the district court. Indeed, such a narrow reading of that decision would contravene the strong policy favoring arbitration.[4] *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78, 81 (2 Cir.1983).

■ We hold nevertheless that the court properly denied defendants' motion for a stay pending arbitration. The arbitration provisions found in the NYSE Constitution and Rules governing member-non-member controversies should be limited, at least in cases such as the instant one in which the alleged improper conduct is on the part of the non-member, to controversies arising out of the member's exchange-related business.[5]

Our holding in this respect we believe to be justified for several reasons. First, the language of the NYSE arbitration provisions as they relate to member-non-member disputes is more restrictive than the language governing member-member disputes. The latter apply to "any controversy" between two NYSE members, whereas the former apply only to controversies arising out of the business of the member. We pointed out this contrast in *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2 Cir.), *cert. denied,* 406 U.S. 949 (1972). We believe that a more restrictive scope was intended for the member-non-member provisions.

Second, and perhaps more important, we agree with the district court's observation that any rule extending the arbitration provisions to controversies not arising out of exchange-related business would do significant injustice to the reasonable expectations of exchange members. Such a rule would require every exchange member, at the insistence of a non-member, to submit to exchange arbitration every dispute it has with any entity in the world, no matter what the subject matter. Defendants' argument would make the "arising out of" language of Article VIII, § 1, of the NYSE Constitution superfluous, since all Paine Webber disputes in some way would arise

---

**4.** It is true that the district court softened somewhat the impact of its decision in footnote 3, stating that its holding should not be read to mean that a purchase and sale agreement incorporating by reference the NYSE arbitration provisions is the *sine qua non* to a non-member's enforcement of the NYSE arbitration provisions. But, immediately preceding this footnote the court had stated that "it is only because of the purchase and sale agreement that a member and non-member have a written agreement to arbitrate as required by 9 U.S.C. § 3". It is the latter statement which we hold is incorrect.

**5.** We wish to note that we are not deciding today whether a non-member could compel arbitration of a dispute in an action in which the alleged wrongdoer is an exchange member and the transaction is not related to exchange business. We acknowledge that, depending on the facts, such a situation might come within the purview of an arbitration agreement adopted in light of the Congressional mandate to exchanges of self-regulation. SEC, Report of Special Study of Securities Markets, H.R.Doc. No. 95, 88th Cong., 1st Sess., pt. 1, at 3 (1963) ("This involves control of exchange markets by requiring or permitting national securities exchanges to adopt rules governing their practices and procedures and *the business conduct of their members. . . .*" (emphasis added)).

from the operation of its business. Moreover, we believe that this result would extend without justification the congressional mandate of self-regulation under which the exchange adopted these dispute resolution provisions. *Silver v. New York Stock Exchange*, 373 U.S. 341, 349–57 (1963). While the exchange has a substantial interest in the resolution of disputes between members—so called "intramural disputes"—which justifies the broader arbitration provision for such disputes, the same interest is not present in all non-exchange-related disputes which members may have with non-members.

Defendants rely on two New York state cases for the proposition that the term "business" is not restricted to exchange-related business. In *Ghiron v. Mayr*, 19 A.D.2d 54, 241 N.Y.S.2d 144 (1st Dep't 1963) (per curiam), a member firm commenced an action against a former registered representative of the member firm for slander. The slanderous words allegedly uttered by the defendant were made to a customer of the firm, regarding the firm's finances, and during the defendant's employment by the plaintiff firm. Thus, that decision to order arbitration is not inconsistent with our holding today, for it appears that the controversy in *Ghiron* arose out of the plaintiff member firm's exchange business and the former representative's employment.[6] Absent an exchange-related transaction relationship, the slanderous words would not have been uttered.

The second New York case relied on by defendants is *Dunay v. Weisglass*, 54 N.Y.2d 25, 429 N.E.2d 92, 444 N.Y.S.2d 573 (1981), which involved a dispute over stock ownership in an ongoing battle for control of a member firm. The Court of Appeals directed most of its attention to the member-member arbitration provisions, but suggested toward the end of its opinion that even the provisions for member-non-member controversies would require the submission of the dispute to arbitration. We believe that *Dunay* is not inconsistent with our decision today. The Court of Appeals pointed out that the stock investments there were not ordinary investment transactions, but affected the management and control of the member firm. Clearly, the substantial interest of the exchange in the sound and proper management of its member firms justified submission of that dispute to exchange arbitration. Such a matter is similar to the several other types of internal matters that already receive the watchful attention of the exchange.[7]

We believe it is clear that, at least when the alleged wrongdoer is a non-member, the non-member arbitration provisions of the NYSE Constitution and Rules apply only to exchange-related controversies.

In the instant case, the controversy does not arise out of the exchange-related business of Paine Webber. Neither Chase nor Oh is a customer of Paine Webber. Neither conducted any exchange-related business with Paine Webber that may have led to the instant controversy. Rather, the controversy arose out of a routine credit check conducted by Morgan at the instance of Paine Webber. Whatever may be the exact meaning of the term exchange-related business, clearly the credit inquiry and extension of credit involved here is not encompassed therein, at least in a situation such as this where the securities transactions between Paine Webber and Sheridan did not involve the exchange in any way.

---

6. Our interpretation of "arising out of", referred to in our discussion of *Ghiron*, is not inconsistent with our interpretation of that language in *Coudert, supra*, 705 F.2d at 81–82. The narrow construction applied in *Coudert* to deny a stay pending arbitration was primarily for the reason that the allegedly slanderous language was made *after* termination of the employment relationship, and thus, while concerning the employment and termination, the dispute did not arise out of the employment or termination. *See also Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 194–95 (2 Cir.1984).

7. *E.g.*, Net capital, Rules 325, 326, 2 N.Y.S.E. Guide (CCH) ¶¶ 2325, 2326; employee and officer records, Rules 341–353, *id.* ¶¶ 2341–2353; margin accounts, Rules 430–433, *id.* ¶¶ 2430–2433; and conduct with respect to customer accounts, Rules 401–413, *id.* ¶¶ 2401–2413.

In view of the ground of our decision set forth above, we find it neither necessary nor appropriate to reach the other claims raised by the parties on appeal.

The mandate shall issue forthwith.

Costs to appellee on this appeal.

Affirmed.