**N. DONALD & COMPANY and Securities Clearing of Colorado, Inc., Appellants,**

v.

**AMERICAN UNITED ENERGY CORPORATION; Winfield Moon, Sr. Winfield Moon, Jr.; Robert E. Jobes; Robert Hughes; Theoleme Moon; Enrienfried Liedich; Main Street Securities, Inc. Edward Brown Securities, Inc.; Western Capital & Securities, Inc.; Keith Wanlass; Terry Bradley; Jerry Vamiden; Richard L. Anderson; Paul T. Bucy; Richard Carey; J.M. Stoof; Steve Leishman; John Katter; John Does; Rooney, Pace, Inc., Appellees.**

**Nos. 83–2048, 83–2049.**

United States Court of Appeals, Tenth Circuit.

Oct. 19, 1984.

David A. Zisser, Fishman, Gersh & Bursiek, P.C., Denver, Colo. (William R. Fishman, Fishman, Gersh & Bursiek, P.C., Denver, Colo., on brief), for appellant N. Donald & Co.

David Lichtenstein, Waldbaum, Corn, Koff & Berger, P.C., Denver, Colo. (Michael H. Berger, Waldbaum, Corn, Koff & Berger, P.C., Denver, Colo., with him on briefs), for appellant Securities Clearing of Colorado, Inc.

Hartley T. Bernstein, New York City (Cohen, Brame & Smith, Denver, Colo., with him on brief), for appellee Rooney, Pace, Inc.

Adam Duncan, Salt Lake City, Utah (David E. Halliday and S. Junior Baker, Snow & Halliday, P.C., Salt Lake City, Utah were on brief), for appellee Western Capital & Securities, Inc.

Wallace Boyack, Boyack & Hansen, Salt Lake City, Utah, for appellee, Main Street Securities.

Before SETH and DOYLE, Circuit Judges, and BOHANON, Senior District Judge.[*]

WILLIAM E. DOYLE, Circuit Judge.

The litigants who brought this suit in the United States District Court for the District of Colorado, 585 F.Supp. 533, seek to obtain reversal of a ruling by the district court judge staying all further judicial proceedings in these actions against all defendants, pending the outcome of arbitration proceedings between plaintiffs and several of the defendants. The request is that the court reverse the order of the district court and remand the case to the district court with instructions to proceed with the federal judicial action against all defendants. A further request is that this court instruct the district court to deny arbitration, or in the alternative, to stay arbitration pending the outcome of this court action below on remand. These cases were consolidated for appeal.

---

[*] Luther L. Bohanon, United States Senior District Judge, Northern, Eastern and Western Districts of Oklahoma, sitting by designation

The two plaintiffs are broker-dealers in securities and are both members of the National Association of Securities Dealers (NASD), a national association of securities broker-dealers. The allegation is that defendants were engaged in a fraudulent plan or scheme to illegally distribute stock of American United Energy Corporation (American United).

The defendants consist of several groups of persons and entities, including: American United, the corporation whose stock was allegedly fraudulently publicly traded; three broker-dealer companies, Edward Brown Securities, Inc., Western Capital & Securities, Inc., and Rooney, Pace Corporation, which were also members of NASD and sold shares of American United for that corporation; and several officers, directors and auditors of American United.

The complaints which have been filed by the plaintiffs against defendants in the district court alleged that defendants were engaged in a scheme to illegally sell stock in the public market at a fraudulently inflated price. Specifically, plaintiffs alleged that defendants' conduct constituted: (1) violations of federal securities laws, specifically, § 10(b) of the Securities Exchange Act of 1934 and 10b–5 of the Regulations, and §§ 12(1) and 12(2) of the Securities Act of 1933; (2) common law fraud and statutory fraud in violation of the Colorado Securities Act § 11–51–123; and (3) violation of the Colorado Organized Crime Control Act and the federal Racketeer Influenced and Corrupt Organizations Act (RICO).

Following the filing of the complaints in the district court, defendants Western Capital & Securities, Inc. (Western Capital) and Rooney, Pace Corporation (Rooney, Pace) requested the court to stay further judicial proceedings and, instead, compel arbitration between themselves and plaintiffs pursuant to the rules and regulations of NASD, of which plaintiffs, Western Capital, and Rooney, Pace were members. On July 6, 1983, the district court granted defendants' request and issued minute orders stating: "This action will be abated pending the outcome of arbitration proceedings."

The district court refused plaintiffs' requests to reconsider and stay the compelled arbitration proceedings. On May 10, 1984, the court issued a memorandum opinion and order in support of its July 6, 1983 minute order and refusal to stay arbitration proceedings. On August 5, 1983, plaintiffs appealed the court's July 6, 1983 orders compelling arbitration.

Inasmuch as there has not been a trial we do not have the basic facts. We do have the allegations of the Plaintiffs with respect to the alleged fraudulent conduct on the part of the defendants. The allegation is that American United devised a scheme to sell its stock in the public market at a fraudulently inflated price. In addition, plaintiffs allege that the three defendant broker-dealer companies aided and abetted these fraudulent sales by acting as "market makers" for American United's stock without adequately investigating American United's true financial worth or discovering the fraudulent representations and financial data.

The scheme to defraud public investors is alleged by plaintiffs to have occurred as follows:

First, American United was organized as a corporation in the spring of 1981 and issued 2,500,000 shares of stock to several of the individual defendants in an intrastate private offering pursuant to federal Securities and Exchange Rule 147. The rule did not require stringent reporting to the federal Securities and Exchange Commission. The issued price per share was one cent.

Second, American United used the $25,000 in proceeds to buy a mining claim in Utah. It never conducted business nor did it ever have any significant assets.

Third, after the expiration of the technical nine-month holding period required by Rule 147, the original purchasers of the 2,500,000 shares of American United began to sell their stock in the public securities market.

Fourth, in an attempt to inflate the value of the stock in the open market, American United issued several fraudulent financial reports and made numerous false and misleading statements.

Fifth, the three named broker-dealer companies attempted to act as "market makers" for the stock and sell it for the original investors. These defendant broker-dealers failed to independently research the accuracy of the financial data provided by American United.

Sixth, as a result of defendants' conduct, the price of American United stock was inflated to $9.50 from one cent per share.

Seventh, in reliance on defendants' statements, plaintiffs committed themselves to purchase for their customers 24,800 shares of American stock for a cost of $213,470. However, before consummating the entire transaction, plaintiffs discovered the fraudulent scheme to manipulate and inflate the stock price and cancelled the purchases. Plaintiffs were forced to sell the stock they had purchased at a loss of $80,187.50, as the price of the stock fell dramatically in the public market after disclosure of the fraudulent scheme. It is this loss that plaintiffs brought suit to recover. Conversely, in requesting the district court to compel plaintiffs to arbitrate, defendants Edward Brown Securities, Western Capital, and Rooney, Pace assert the current dispute actually arises out of plaintiffs' refusal to honor their commitments to purchase American United stock from defendant broker-dealers and that plaintiffs should be forced to honor those commitments.

There is only one issue on appeal and that is:

WHETHER IT WAS REVERSIBLE ERROR FOR THE DISTRICT COURT TO STAY THE SUIT IN FEDERAL COURT PENDING COMPLETION OF ARBITRATION PROCEEDINGS BETWEEN PLAINTIFFS AND DEFENDANT BROKER-DEALER COMPANIES.

Plaintiffs maintain that judicial proceedings ought not to have been stayed pending arbitration, because such arbitration defeats the federal court's exclusive jurisdiction over cases involving federal securities law violations.

The contention is that the district court erred in staying its action against all defendants in federal district court and requiring them to complete arbitration proceedings with the three defendant broker-dealer companies to settle their dispute. Plaintiffs argue in support of their contention that the suit in federal court ought not to have been stayed.

They concede that as members of NASD they agreed to arbitrate all disputes with fellow member broker-dealers; however, they contend that such an agreement is invalid and unenforceable in this instance since it would operate to deprive the federal district court of its exclusive jurisdiction over federal securities law claims. They cite *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), and *Merrill Lynch, Pierce, Fenner & Smith v. Moore*, 590 F.2d 823 (10th Cir.1978), for the proposition that the right to select a judicial forum for the resolution of federal securities claims is not to be waived and that, therefore, any agreement between sellers and purchasers of securities to arbitrate future claims is void. Plaintiffs further contend that Colorado law likewise voids such arbitration agreements with respect to claims brought under the Colorado Securities Act. *Sandefer v. Reynolds Securities, Inc.*, 44 Colo.App. 343, 618 P.2d 690 (1980).

Plaintiffs further assert that § 28(b) of the Securities Act of 1934, adopted in 1975 and generally viewed as establishing a statutory exception to the *Wilko* doctrine, applies only to resolution of "internal disputes". Plaintiffs contend that judicial resolution of certain types of securities disputes, such as the alleged wholesale stock fraud disputes of the kind present in the instant case, is still favored, because such disputes raise concerns of public interest. *Citing Allegaert v. Perot*, 548 F.2d 432 (2d Cir.1977), *cert. denied*, 432 U.S. 910, 97

S.Ct. 2959, 53 L.Ed.2d 1084 (1977). They conclude that the district court erred in ordering arbitration in this case and in staying judicial proceedings pending the outcome of such arbitration.

It is also contended that even if the claims between plaintiffs and the three broker-dealer defendants are arbitrable, those claims are so "intertwined" with the nonarbitrable claims involving the other defendants that it is impossible to separate them. Therefore, plaintiffs argue, in order to preserve the district court's jurisdiction over these nonarbitrable claims, the arbitration should be denied or stayed until completion of the judicial proceedings.

The Supreme Court has spoken generally on this question of plaintiffs' first argument in *Wilko, supra.* In support of their contention that the NASD arbitration agreement is void, plaintiffs rely on the non-waiver provision of the Securities Act of 1933 (hereinafter the 1933 Act) and the Securities Exchange Act of 1934 (hereinafter, the 1934 Act) and the United States Supreme Court decision of *Wilko, supra.* Section 14 of the 1933 Act provides:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this title or of the rules and regulations of the [Securities and Exchange] Commission shall be void.

15 U.S.C. § 77n.

Section 29(a) of the 1934 Act uses similar language:

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

15 U.S.C. § 78cc(a).

■ Thus, it would appear that the law applicable to broker-dealers is different from that which is applicable to the individual purchaser of shares of stock. In our decision in *Moore, supra,* it was held that there could not be a waiver of the right to choose the legal forum for the consideration of this problem. However, our decision did not reach out and consider the applicable rule where both participants are dealers. The law in this area appears to be that arbitration agreements between members of self-regulatory organizations, such as NASD, are valid and enforceable and are not precluded by the non-waiver provisions of either the 1933 or the 1934 Act. There are two exceptions to this rule, First, there should be no fraud in the inducement or enticement to become a member of the self-regulatory organization and thereby become bound by its rules and regulations, including here the arbitration agreement. *See O'Neel v. NASD,* 667 F.2d 804, 806 (9th Cir.1982); *Rice v. McDonnell & Co., Inc.,* 386 F.Supp. 315 (S.D.N.Y. 1974). Plaintiffs here made no allegations of fraud related to their membership in NASD.

Furthermore, the arbitration agreement is not to be enforced if the dispute involves a "wholesale fraud of institutional dimension." *Allegaert v. Perot,* 548 F.2d 432, 437 (2d Cir.1977). In *Allegaert,* the Second Circuit Court of Appeals refused to stay litigation pending arbitration. The court apparently relied heavily on the immense nature of the dispute and found that the public had an overriding interest in its judicial resolution. The case, which was brought by a trustee in bankruptcy, involved the collapse of one of the major brokerage houses on Wall Street.

Even if we were to follow *Allegaert* in this circuit, its application would not require voiding the arbitration agreement in the instant case. We do not have a trustee in bankruptcy here. Furthermore, although the alleged fraudulent scheme may be considered substantial, plaintiffs have presented no evidence that it rises to the level of "wholesale fraud of institutional dimension." Because there is such a weighty presumption that arbitration is proper in disputes between members of self-regulatory organizations, the "simple assertion of securities law violations or even the assertion of massive securities law violations does not overcome the presumption." *Himebaugh v. Smith,* 476 F.Supp. 502, 509 (C.D.Ca.1978). Accordingly, plaintiffs fail to come within the exception declared in *Allegaert.*

As stated previously, this issue, arising under the facts such as we have here, is of first impression in this circuit. The decisions in other circuits have no binding effect in this circuit. After reviewing the holdings and rationale of those decisions, this court approves their reasoning and holds that the district court correctly ruled that the agreement made by plaintiffs as members of NASD to arbitrate disputes with fellow members is valid and enforceable. Plaintiffs attempt to invoke the doctrine of "intertwining" to support their contention that the district court erred in refusing to stay arbitration until nonarbitrable issues are adjudicated in court. The plain answer to this is that the trial court has discretion whether to stay arbitration pending a judicial resolution of nonarbitrable claims. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981). No abuse has been shown.

Accordingly, the judgment of the district court is affirmed. This would include the district court's refusal to stay arbitration.