OPINION OF THE COURT
 

 Titone, J.
 

 The underlying dispute in this case arises out of certain of petitioner’s business activities that were not conducted through the auspices of the New York Stock Exchange (NYSE) or any of the other self-regulated exchanges within the United States. The issue before us is whether rule 600 (a) of NYSE’s rules, to which petitioner, a NYSE member, has subscribed, requires petitioner to submit to arbitration conducted under NYSE’s auspices, at the request of respondent, who is not a NYSE member. Our reading of the NYSE rule and the relevant case law construing it leads us to conclude that petitioner is bound to arbitrate the dispute before NYSE even though the dispute is unconnected to petitioner’s NYSE activities.
 

 Petitioner is a registered broker-dealer which engages in a variety of securities transactions. Because it effects some transactions through NYSE, petitioner is a member of that exchange and, as such, has agreed to be bound by the exchange’s rules, including rule 600 (a)’s provisions for mandatory arbitration of certain disputes.
 

 The dispute that brought these parties to court, however, concerns transactions in American Depository Receipts (ADR’s), which are not traded through NYSE. Indeed, ADR’s are financial instruments which are used to facilitate trading in the shares of foreign corporations that are
 
 not
 
 listed on any of the domestic exchanges. ADR’s are, in substance, "receipts” issued by a domestic bank for shares of foreign corporations that have been deposited in an overseas bank. These "re
 
 *617
 
 ceipts” can then be traded in the United States without any of the complications that ordinarily arise because of currency conversions and customs requirements.
 

 The ADR’s that are at the center of this litigation represent common shares in Mitsui & Co., Ltd., a Japanese business concern whose securities are traded on the Tokyo Stock Exchange. Respondent Citibank is the exclusive authorized depository bank for Mitsui shares. Respondent’s bank facility in Japan customarily holds the Mitsui common shares, and its facility in the United States issues ADR equivalents to American investors under an agreement that requires the American ADR’s to "mirror” the shares held in Japan. As a consequence of this agreement, respondent is obligated to pay ADR holders dividends and other benefits to match whatever dividends and benefits that accrue on the Mitsui shares held in Japan.
 

 On September 16, 1986, Mitsui declared a dividend of 10% to be paid on common shares held on a specific date occurring later in the month. At various points after that date, petitioner purchased Mitsui shares for several of its customers, depositing those shares in respondent’s facility in Japan. Respondent’s American facility issued ADR’s representing these shares to petitioner and petitioner immediately placed these ADR’s in its customers’ custodial accounts. According to respondent Citibank, these shares, which were not entitled to dividends, were handled by petitioner’s agent, Depository Trust Co. (DTC), in a manner that made it impossible to distinguish them from ADR’s that were entitled to dividend payments. Thus, on the date the dividend declared on September 16, 1986 became payable, all of petitioner’s customers who had purchased ADR’s representing Mitsui shares were incorrectly credited with the dividend and respondent’s account with DTC was debited accordingly.
 

 Respondent thereafter filed a statement of claim demanding arbitration before NYSE. The gist of respondent’s claim was that petitioner had violated industry standards by refusing to arrange for the return of the improperly paid dividends and, additionally, that petitioner had been unjustly enriched at respondent’s expense. Petitioner thereafter made the present application for an order staying arbitration on the ground that the dispute was not within the coverage of rule 600 (a).
 

 The trial court rejected petitioner’s arguments and denied its request for relief. The court noted that the dispute between petitioner and respondent was within the literal language of
 
 *618
 
 rule 600 (a) and concluded that there was nothing in the recent case law interpreting that rule to warrant a departure from its literal terms in this situation. On petitioner’s appeal, the Appellate Division affirmed for essentially the same reasons. The intermediate appellate court then granted petitioner leave to appeal to this Court.
 

 NYSE rule 600 (a) mandates arbitration of "[a]ny dispute * * * between a * * * non-member and a member * * * arising in connection with the business of such member * * * upon the demand of the * * * non-member.” Petitioner is a member of NYSE, respondent is a customer of petitioner and the dispute unquestionably arises out of petitioner’s business activities. Thus, the dispute clearly falls within the rule’s literal reach.
 

 Despite its apparent applicability, petitioner argues that the rule’s mandatory arbitration provisions should not be employed in this dispute because the scope of the rule has been limited by recent case law and those limitations are applicable here. Specifically, petitioner relies on the principle formulated in
 
 Paine, Webber, Jackson & Curtis v Chase Manhattan Bank
 
 (728 F2d 577). In that case, the Second Circuit considered the special difficulties involved in applying a NYSE rule to situations involving business entities that are
 
 not
 
 NYSE members and held that the reach of rule 600 (a) "should be limited,
 
 at least in cases * * * in which the alleged improper conduct is on the part of the non-member,
 
 to controversies arising out of the member’s
 
 exchange-related
 
 business”
 
 (id.,
 
 at 580-581 [emphasis supplied]). The
 
 Paine, Webber
 
 holding was reiterated by the Second Circuit in
 
 Haviland v Goldman, Sachs & Co.
 
 (947 F2d 601,
 
 cert denied
 
 — US —, 112 S Ct 1995), but the court continued to "confine [its] ruling to situations in which the alleged misconduct is attributed to the nonmember”
 
 (id.,
 
 at 606, n 1;
 
 see also, Pearce v E.F. Hutton Group,
 
 828 F2d 826).
 

 By its terms, the
 
 Paine, Webber
 
 holding does not necessarily relieve petitioner of its rule 600 (a) obligations in these circumstances, since, unlike in that case, the allegations of misconduct here refer to the activities of petitioner, a NYSE member, rather than to the activities of a nonmember. Indeed, as petitioner’s submissions make clear, the proper application of rule 600 (a) to these facts is precisely the question that the Second Circuit left open in
 
 Paine, Webber
 
 when it stated that it was "not deciding * * * whether a non-member could compel arbitration of a dispute in an action in which the
 
 *619
 
 alleged wrongdoer is an exchange member and the transaction is not related to exchange business” (728 F2d, at 580, n 5). Nonetheless, petitioner contends, the
 
 Paine, Webber
 
 rationale, as well as the analysis in subsequent cases
 
 (e.g., Haviland v Goldman, Sachs & Co., supra),
 
 compels extension of the
 
 Paine, Webber
 
 holding to the dispute at issue here.
 

 Initially, we note that, as the parties agree, the question whether respondent nonmember can compel arbitration under rule 600 (a) is one that must be resolved under Federal-law principles
 
 (see generally, Singer v Jefferies & Co.,
 
 78 NY2d 76, 81). Further, although the United States Supreme Court has not yet spoken on the proper application of rule 600 (a) in disputes between exchange members and nonmembers, the Federal courts, particularly the United States Court of Appeals for the Second Circuit, have had occasion to explore the problem and have established a series of postulates that furnish a starting point for analysis
 
 (see, Flanagan v Prudential-Bache Sec.,
 
 67 NY2d 500, 505-506 [absent definitive Supreme Court precedent on the question, State courts should follow "rule established by lower Federal courts if they are in agreement”]). In any event, the parties to this appeal have assumed the correctness of the Second Circuit’s decision in
 
 Paine, Webber
 
 and, accordingly, have narrowed the issue before us to whether, under the logic of that decision, its holding should be extended to these facts. Thus, there is no need in this appeal for us to consider the validity of the
 
 Paine, Webber
 
 rule or to look beyond the analysis in the existing Federal case law.
 

 In holding that the literal language of rule 600 (a) must be narrowed in at least some disputes involving NYSE members and nonmembers, the Second Circuit noted first that the judiciary should be guided by the "reasonable expectations” of the member who, in becoming a signatory, agreed to be bound by rule 600 (a). Using these "reasonable expectations” as a touchstone, the court then went on to conclude that it is unreasonable to infer from the rule that a NYSE member would be required to submit to arbitration "every dispute it has with any entity in the world, no matter what the subject matter” (728 F2d, at 580-581). Moreover, the Second Circuit observed, requiring members to arbitrate all of their business disputes regardless of the membership status of the adversary or the origin and nature of the dispute would "extend without justification the congressional mandate of self-regulation under which the exchange adopted these dispute resolution
 
 *620
 
 provisions”
 
 (id.,
 
 at 581). As petitioner here has noted, literal application of the rule would lead to the absurd conclusion that even eviction proceedings brought by members against their nonmember tenants would be subject to NYSE arbitration at the tenant’s insistence, since such disputes could fairly be said to "aris[e] in connection with” the member’s business, albeit not the member’s exchange-related business.
 

 The considerations that led the Second Circuit to adopt a narrowing construction in
 
 Paine, Webber
 
 are not as persuasive in a case involving a nonmember’s claim based on a NYSE member’s alleged wrongdoing. As noted in the District of Columbia Circuit’s opinion in
 
 Pearce v E.F. Hutton Group (supra,
 
 at 832), a
 
 post-Paine, Webber
 
 decision, it may be anomalous to allow a nonmember to compel NYSE arbitration of a dispute concerning its own allegedly wrongful actions when that party has no relationship to NYSE, is not a party to any agreement to arbitrate and is beyond NYSE’s regulatory authority. In contrast, "no such anomaly arises” where the dispute concerns the actions of a party that has agreed to be subject to NYSE arbitration and, further, is within NYSE’s regulatory power
 
 (id.,
 
 at 832).
 

 In such situations, it is certainly reasonable for the signatory member to expect that claims by nonmembers calling its business practices into question would be subject to arbitration under rule 600 (a). Further, as was suggested by the analysis in
 
 Haviland v Goldman, Sachs & Co. (supra,
 
 at 607), "the Exchange’s interest in the business conduct of its members” itself warrants imposition of NYSE’s arbitration requirements in such disputes. Manifestly, the Second Circuit’s objection to "extending] without justification the congressional mandate of self-regulation”
 
 (Paine, Webber, Jackson & Curtis v Chase Manhattan Bank, supra,
 
 at 581) is not present when a claim asserted by an outsider to the exchange raises questions about a member’s business practices. Thus, the rationale for departing from the literal language of rule 600 (a) is vitiated and the plain terms of the rule itself should control.
 

 For similar reasons, we reject petitioner’s final contention that the "wrongdoer” exception to the
 
 Paine, Webber
 
 rule is inapplicable in this case because the conduct alleged in respondent’s statement of claim is not "wrongful.” The gist of petitioner’s argument in this regard is that it is not an "alleged wrongdoer” as that phrase is used in
 
 Paine, Webber
 
 because it has not been accused of fraud, misrepresentation or
 
 *621
 
 any other corrupt practice and, consequently, the regulatory interests of the exchange are not implicated in the dispute.
 

 The problem with petitioner’s argument is, quite simply, that it takes too narrow a view of NYSE’s regulatory goals. Manifestly, those goals are not limited to combatting dishonest or unscrupulous conduct on the part of those who trade in securities. On the contrary, NYSE and the other self-regulated exchanges have an indisputable interest in " 'governing [the] practices and procedures and the business conduct of their members’ ”
 
 (Paine, Webber, Jackson & Curtis v Chase Manhattan Bank, supra,
 
 at 580, n 5, quoting SEC, Report of Special Study of Securities Market, HR Doc No. 95, 88th Cong, 1st Sess, pt 1, at 3 [1963]).
 

 Petitioner has been accused of conducting securities transactions through an agent whose record-keeping practices led to an erroneous transfer of funds attributable to dividend payments. Further, the statement of claim filed against petitioner alleged that petitioner violated "industry practice” by failing to return or to cause the return of these dividend payments. Both of these charges implicate the exchange’s interest in assuring accuracy in financial transactions and in monitoring adherence to industry practice. Such interests are far more central to the exchange’s self-regulatory mission than was the broad interest in members’ "reputations” that was apparently rejected as a basis for requiring rule 600 (a) arbitration in
 
 Haviland v Goldman, Sachs & Co. (supra,
 
 at 606-607;
 
 but cf., Pearce v E.F. Hutton Group, supra,
 
 at 830 [stressing exchange’s interest in reputation as valid ground for compelling arbitration]). Thus, applying rule 600 (a)’s arbitration mandate to this situation would not exceed either the reasonable expectations of NYSE’s members or the proper boundaries of the exchange’s self-regulatory authority
 
 (see, Paine, Webber, Jackson & Curtis v Chase Manhattan Bank, supra,
 
 at 581).
 

 In sum, as both courts below concluded, petitioner is obligated by the terms of rule 600 (a) to arbitrate respondent’s claim regarding petitioner’s ADR transactions in the fall of 1986. Consequently, petitioner was not entitled to an order staying arbitration, and its application for such relief was properly denied.
 

 
 *622
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa and Smith concur.
 

 Order affirmed, with costs.