**L. William ALTER, Jr., Plaintiff,**

v.

**Israel A. ENGLANDER; the Englander Capital Corp.; Aegis Partners Specialist Joint Account; Martin Weinburg; and Dennis Poster, Defendants.**

**No. 95 Civ. 4131 (SHS).**

United States District Court, S.D. New York.

Oct. 24, 1995.

---

Gold & Wachtel, New York City, for plaintiff.

Sexter & Warmflash, New York City, for defendants.

## MEMORANDUM AND ORDER

STEIN, District Judge:

Plaintiff L. William Alter brings this diversity action for breach of contract. Defendants have moved for an order pursuant to 9 U.S.C. §§ 3 and 4 staying the proceedings and compelling arbitration. For the reasons that follow, defendants' motion is granted insofar as arbitration is compelled and the action is dismissed without prejudice.

### Background

In September 1988, a partnership known as Aegis Partners Specialist Joint Account ("Aegis") was formed, consisting of four corporations, including L. William Alter & Co., Inc., of which plaintiff Alter was the sole shareholder, and defendant Englander Capital Corp., of which defendant Israel A. Englander was the sole shareholder. Aegis was and is a registered specialist for certain stocks traded exclusively on the American Stock Exchange ("Amex"). Each corporation-partner was a member of Amex at all relevant times, as was each principal owner of the corporation-partners. The partnership agreement provided that all disputes would be settled by arbitration, per the rules of Amex.

After disputes arose in 1990, Alter's corporation withdrew from the partnership in June of that year. The question of the allocation of securities in which Aegis specialized was submitted to an Amex Committee for arbitration, in accordance with the rules of Amex. The Committee rendered a decision on June 27, 1990 instructing Alter and Englander to allocate 12.5% of the securities to Alter. On July 10, 1990, after the parties could not

decide which securities to allocate, the Committee made the allocation itself. On August 10, 1990, after an initial modification of the decision, the parties agreed with the Committee to a final modification of the decision (as modified, the "1990 agreement" or the "agreement").

The 1990 agreement provides, in part, that Alter would receive 50% of the annual gross commissions and 25% of the annual gross trading profits for a fifteen year period for trading in four designated securities, provided that they remained Amex-listed securities. The agreement also provided that Alter and Englander would use their best efforts to maintain the designated securities' status as Amex-listed securities.

By August 1993, three of the four designated securities had ceased trading on Amex. Alter claims that Englander did not use his best efforts to maintain the designated securities as Amex-listed securities. He also claims that his payments under the 1990 agreement have not been calculated properly. His complaint alleges breach of contract and he asks for a reformation of the 1990 agreement and an accounting, as well as damages.

Defendants now move for an order staying the proceedings in this Court and compelling arbitration, pursuant to 9 U.S.C. §§ 3 and 4.

### Discussion

Defendants point to two arbitration provisions in support of their motion, one in the original Aegis partnership agreement and one in the Amex Constitution. Plaintiff gives two reasons why these provisions do not apply. First, he argues that the Court should exercise its equitable powers and decline to send the dispute to arbitration by Amex because Amex has already demonstrated its partiality in favor of the defendants. Second, Alter argues that neither arbitration provision applies. The arbitration clause from the original partnership agreement cannot be considered, Alter asserts, because he is no longer a party to that agreement and because the dispute did not arise from that agreement. The Amex arbitration provision does not apply, he argues, because there is currently no business between him and the defendants. Since the

dispute arises only from the 1990 agreement, which has no arbitration clause, and since arbitration can only be compelled when the parties have consented to it, he reasons, it cannot be compelled here.

*Partiality of the Arbitrators*

■ Alter's first argument can be disposed of rather quickly. Challenges based on the alleged partiality of arbitrators cannot be made before an award issues. *See Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n. 4 (2d Cir.1980) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."); *Marc Rich & Co. v. Transmarine Seaways Corp. of Monrovia*, 443 F.Supp. 386, 387–88 (S.D.N.Y.1978); *Catz American Co. v. Pearl Grange Fruit Exchange, Inc.*, 292 F.Supp. 549, 551 (S.D.N.Y.1968).

■ Even assuming that this Court would entertain such a challenge, pursuant to the standards applicable under 9 U.S.C. § 10(a)(2), the bias must be " 'direct and definite; mere speculation is not enough' " to avoid arbitration. *Pompano–Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.*, 698 F.Supp. 504, 516 (S.D.N.Y.1988) (quoting *Sofia Shipping Co. v. Amoco Transport Co.*, 628 F.Supp. 116, 119 (S.D.N.Y.1986)). Additionally, there must be " 'a showing of something more than the mere "appearance of bias." ' " *Id.* (quoting *Morelite Const. Corp. v. N.Y.C. Dist. Council Carpenters*, 748 F.2d 79, 83–84 (2d Cir.1984)).

The evidence that Alter gives of partiality does not meet that standard. The evidence he cites, namely 1) a letter written in 1991 from an Amex official stating that "the terms of the arbitration decision ... were carried out" and that "there is nothing [Amex] can do to alleviate Mr. Alter's economic situation," and 2) the fact that Jules Winter, former Executive Vice–President of Amex, is now an employee of the Englander Corporation, and that Englander at some point succeeded Joel Lovett as Chairman of the Specialists Association of Amex, is inadequate. Although Alter states that both Winter and Lovett "were integrally involved in the un-

derlying arbitration," he does not say what relevance this has to the current dispute. Additionally, as Judge Leisure pointed out in *Pompano, id.* at 516–17, the alleged partiality must be attributable to the *arbitrators,* not the *forum.* Alter alleges only that Amex would be biased; he does not set forth who the potential arbitrators are—if indeed they have yet been appointed. Moreover, the claim that the allegedly tainted forum—Amex—would cause the appointment of biased arbitrators is extremely attenuated. *See id.* at 517–18. Finally, if the arbitration does turn out to be biased, Alter will be able to challenge it at the appropriate time pursuant to 9 U.S.C. § 10(a)(2). *See Pompano,* 698 F.Supp. at 519.

Thus, the Court finds no reason to prevent this matter from proceeding to arbitration under the auspices of Amex.

*Whether Alter is Bound by Either Arbitration Clause*

■ The original Aegis partnership agreement contained the following provision: "Any question or controversy arising out of or pertaining to this agreement shall be submitted to and settled by arbitration pursuant to the Constitution and Rules of the Exchange, except as otherwise provided in [this agreement]." The Amex Constitution states, at Article VIII, ¶ 9062: "Members, member firms, partners of member firms, member corporations and officers of member corporations shall arbitrate all controversies arising in connection with their business between or among themselves...."

Regardless of whether, as Alter asserts, the arbitration clause in the original Aegis agreement is inapplicable on the grounds that the agreement itself is no longer in force, he is bound by the arbitration clause in the Amex Constitution. There is a "weighty presumption that arbitration is proper in disputes between members of self-regulatory organizations." *Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961, 967 n. 9 (S.D.N.Y.1987) (citing *N. Donald & Co. v. American United Energy Corp.,* 746 F.2d 666, 670 (10th Cir.1984)), *aff'd,* 847 F.2d 834 (2d Cir.1988). Indeed, the general rule is that "arbitration agreements between members of self-regulatory organizations are valid

and enforceable." *Creative Securities,* 671 F.Supp. at 966 n. 9. Alter does not appear to dispute that he is an "officer[ ] of [a] member corporation[ ]," and that the defendants are all either "[m]embers, member firms, partners of member firms, member corporation, [or] officers of member corporations." He does, however, dispute that this is a "controvers[y] arising in connection with their business between or among themselves" because Alter's corporation is no longer an Aegis partner.

However, the Amex clause has been held to be very broad, *see, e.g., Muh v. Risher,* 38 N.Y.2d 441, 444, 381 N.Y.S.2d 23, 25, 343 N.E.2d 742, 743 (1975); *Neiman v. Becker Securities Corp.,* 91 A.D.2d 536, 536, 457 N.Y.S.2d 8, 8 (1st Dept.1982), as have similar clauses applicable to members of the National Association of Securities Dealers ("NASD"), *see, e.g., McMahan Securities Co. L.P. v. Forum Capital Markets L.P.,* 35 F.3d 82, 88 (2d Cir.1994); *Creative Securities,* 671 F.Supp. at 967, and the New York Stock Exchange ("NYSE"), *see, e.g., Kelleher v. Reich,* 532 F.Supp. 845, 849 (S.D.N.Y.1982); *Nomura Sec. Intern. Inc. v. Citibank, N.A.,* 81 N.Y.2d 614, 620–21, 601 N.Y.S.2d 448, 450–51, 619 N.E.2d 385, 387–88 (1993); *Dunay v. Weisglass,* 54 N.Y.2d 25, 34, 444 N.Y.S.2d 573, 577, 429 N.E.2d 92, 96 (1981).

For example, in *Muh,* 38 N.Y.2d at 443, 381 N.Y.S.2d at 24, 343 N.E.2d at 743, the chairman of an Amex member firm agreed to sell his shares in the firm to other officers of the firm in contemplation of the chairman's retirement. When the purchasers defaulted, the chairman commenced a litigation. *See id.* at 443, 381 N.Y.S.2d at 25, 343 N.E.2d at 743. The New York Court of Appeals held that the chairman was obligated to arbitrate his claims because of the Amex provision. *See id.* at 444, 381 N.Y.S.2d at 25, 343 N.E.2d at 743.

In *McMahan,* 35 F.3d at 84–85, an NASD member firm sued another member firm and several former employees who had left to form the defendant firm. The claims involved alleged improprieties by the former employees, including misappropriation of trade secrets, breach of fiduciary duty, breach of contract, unfair competition, and

copyright infringement. *See id.* at 85. The court noted that defendants allegedly misappropriated, *inter alia,* plaintiff's computer system, an "integral component of a brokerage business." *Id.* at 88. The court held that the plaintiff's claims of misappropriation "easily [fell] within the broad scope of affairs 'arising in connection with the business' of" both firms. *Id.*

Here, the 1990 agreement concerned profits and commissions from trading in four securities in which Aegis was the registered specialist. Alter claims that monies due him under the agreement were not calculated correctly and that the defendants breached the agreement by not using their best efforts to keep the securities on Amex. These claims therefore relate directly to defendants' business because they concern the performance of securities traded on the exchange, securities for which Aegis was the registered specialist. Moreover, the claims relate to the former, if not current, business of Alter's.

Additionally, this case arises out of a dispute concerning the internal structure of an exchange member. The dispute revolves around the agreement that accompanied, and was a critical component of, one partner's departure. Therefore, it "relates to the functioning of" Aegis, an Amex member, and to its "management and control." *Kelleher,* 532 F.Supp. at 849; *Dunay,* 54 N.Y.2d at 34, 444 N.Y.S.2d at 577, 429 N.E.2d at 96. As the Second Circuit has written: "Clearly, the substantial interest of the exchange in the sound and proper management of its member firms justifie[s] submission of [such a] dispute to exchange arbitration." *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A.,* 728 F.2d 577, 581 (2d Cir. 1984). The broad language of the Amex provision, therefore, encompasses the instant dispute.

### Conclusion

Defendants' motion to stay the proceedings and compel arbitration is granted insofar as arbitration is compelled. Because in these circumstances it would serve no purpose to stay the action, *see Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Hart Enterprises Interna-*tional, *Inc. v. Anhui Provincial Import & Export Corp.,* 888 F.Supp. 587, 591 (S.D.N.Y. 1995), it is dismissed without prejudice.

SO ORDERED.