993 F.2d 814
 62 USLW 2032
 WHEAT, FIRST SECURITIES, INC., Plaintiff-Appellee,
v.
Ronald G. GREEN, Paul A. Duke, Jean F. Duke, Paul A. Duke,
Jr., C. Hunter Tison, Laura D. Tison, Ruth
Strickland, Herb Strickland, Paul A.
Duke, Trustee for Terri L.
Strickland,
Defendants-
Appellants.
 No. 92-8557.
 United States Court of Appeals,
Eleventh Circuit.
 June 21, 1993.
 
 Sumner & Hewes, Stephen J. Anderson, William E. Sumner, David A. Webster, Atlanta, GA, for defendants-appellants.
 Rogers & Hardin, Peter Wayne Schneider, Laura Hightower Robison, Atlanta, GA, for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before BLACK and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.
 CARNES, Circuit Judge:
 
 
 1
 Before us in this appeal is the question of whether a district court or an arbitrator should decide the threshold issue of whether the parties agreed to arbitrate any disputes that arise between them. In the present case, the court properly concluded that this decision was within the province of a court, and not an arbitrator, and also correctly held that the securities fraud claims presented are not subject to arbitration.
 
 
 2
 Appellants Ronald G. Green, Paul A. Duke, Jean F. Duke, Paul A. Duke, Jr., C. Hunter Tison, Laura D. Tison, Ruth Strickland, Herb Strickland, and Paul A. Duke, the Trustee for Terri L. Strickland, ("Appellants") now appeal the district court's decision as reflected in its order granting Wheat, First Securities, Inc.'s motion for summary judgment on its declaratory judgment claim and denying Appellants' motion to dismiss or, alternatively, for summary judgment. Finding no error in the district court's disposition of the parties' cross-motions, we affirm.
 
 I. FACTUAL BACKGROUND
 
 3
 There is virtually no dispute over the facts of this case. Wheat, First Securities, Inc. ("Wheat First") is a securities broker-dealer with membership in the National Association of Securities Dealers ("NASD"). Appellants are investors who held securities trading accounts with Marshall & Co. Securities, Inc. ("Marshall Securities"), another broker-dealer, from 1984 through 1989.
 
 
 4
 The present declaratory judgment action was spawned by January 1990 arbitration proceedings filed before the NASD by Appellants against Wheat First, Marshall Securities, Kentwood Brett Thackston (formerly an agent of Marshall Securities and subsequently an agent of Wheat First), and others. In those proceedings, Appellants alleged that Thackston, as agent for Marshall Securities, made certain material misrepresentations to them in connection with their purchases of shares of 21st Century Robotics, Inc., and its successor corporations TFC Teleservices, Inc. and Central Corporation, Inc. (collectively, "Central stock"). Wheat First was not involved in any of the Appellants' purchases of Central stock.
 
 
 5
 Well after the allegedly fraudulent Central stock transactions occurred, Wheat First happened upon the scene by virtue of an Asset Purchase Agreement it signed with Marshall Securities and its holding company, Marshall & Company, Inc. ("Marshall"). Under this agreement, Wheat First purchased certain of Marshall Securities' assets and assumed certain of its contracts. However, Wheat First expressly did not "assume any liability, known or unknown, fixed or contingent, of [Marshall or Marshall Securities] except for [Marshall Securities'] liabilities and obligations under the Contracts" that were specified in an exhibit to the agreement. Appellants' customer agreements with Marshall Securities were not included among the identified "Contracts" specified in that exhibit to the Asset Purchase Agreement.[1]
 
 
 6
 Despite this seemingly unequivocal disclaimer in the Asset Purchase Agreement, Appellants maintain that Wheat First is liable for the acts of Marshall Securities as its successor in interest. More specifically, Appellants assert that, pursuant to the Asset Purchase Agreement, Marshall Securities transferred their trading accounts and certain customer agreements to Wheat First. Wheat First acknowledges that it now maintains accounts for some of the Appellants, but denies that the Asset Purchase Agreement covered either trading accounts or customer agreements. Wheat First argues that Marshall Securities, as a brokerage firm, did not own the Appellants' accounts and could not "sell" them. Rather, Wheat First asserts that Appellants, as customers, made a choice to transfer the securities in their accounts with Marshall Securities to accounts with Wheat First.
 
 
 7
 In response to Appellants' arbitration claims and their refusal to dismiss Wheat First from the arbitration proceedings, Wheat First filed the present action for declaratory judgment, seeking a declaration that it had no obligation to arbitrate the claims raised in the arbitration proceedings. After discovery, the parties filed their cross-motions for summary judgment. The district court disposed of the parties' motions in its Order of March 17, 1992. The court held that "the issue of whether parties have entered into a contract containing an arbitration clause is properly resolved by a court." The district court then declared that "Wheat First is not obligated to arbitrate any claims arising out of trading Defendants conducted through their Marshall Securities accounts." Finally, the court permitted the arbitration proceedings to proceed against Wheat First but only as to the allegations of one of the Appellants that arose out of trading in what was actually a Wheat First account. Wheat First does not contest that one aspect of the decision that went against it, so there is no cross-appeal.
 
 II. DISCUSSION
 
 8
 Appellants argue that the district court "usurped" the role of the arbitrators in deciding the threshold question of whether Appellants' claims are arbitrable. Appellants further contend that Wheat First must submit to arbitration for two reasons. The first is the NASD Code theory under which Appellants contend that Wheat First, as a member of the NASD, is obligated to arbitrate "any dispute, claim, or controversy" arising "in connection with the business" of Wheat First with any of its public "customers." NASD Code of Arbitration Procedure, §§ 1, 12(a) (the "Code"). Second, Appellants argue that Wheat First acceded through the Asset Purchase Agreement to the Appellants' customer agreements with Marshall Securities which contained arbitration clauses, and that Wheat First is, therefore, bound as Marshall Securities' successor in interest.[2] We will examine each of these contentions in turn.
 
 A. WHO DECIDES THE ARBITRABILITY ISSUE
 
 9
 Contract interpretation is generally a question of law that is subject to plenary review. Zaklama v. Mount Sinai Medical Ctr., 906 F.2d 650, 652 (11th Cir.1990). "Determinations of arbitrability, like the interpretation of any contractual provision, are subject to de novo review." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992).
 
 
 10
 Appellants correctly note that in enacting § 2 of the Federal Arbitration Act ("FAA"), "Congress declared a national policy favoring arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). However, the policy fostered by the FAA "does not require parties to arbitrate when they have not agreed to do so." Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Echoing this view, this Court has recently stated that "[s]imply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir.1992); accord I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir.1986) (An arbitrator "has no independent source of jurisdiction apart from the consent of the parties."); George Day Constr. Co. v. United Brotherhood of Carpenters, Local 354, 722 F.2d 1471, 1474 (9th Cir.1984) ("[A]n arbitrator's jurisdiction is rooted in the agreement of the parties."); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir.1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").
 
 
 11
 It is, therefore, rudimentary that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Section 4 of the FAA supports this conclusion. This section, which provides a federal remedy to a party seeking to compel compliance with an arbitration agreement, specifies that:
 
 
 12
 The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.
 
 
 13
 9 U.S.C. § 4 (emphasis added).
 
 
 14
 In Chastain v. Robinson-Humphrey Co., this Court applied the former Fifth Circuit's two-component test for determining whether the arbitrability question should first be litigated before the district court. The party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer "some evidence" to substantiate the denial. Chastain, 957 F.2d at 854 (citing T & R Enters. v. Continental Grain Co., 613 F.2d 1272, 1278 (5th Cir.1980)). Wheat First has absolutely denied that it is bound to arbitrate the Appellants' Marshall Securities claims and, to the extent it is possible to prove a negative, has offered evidence to prove that there was no agreement to arbitrate. The Appellants have not refuted Wheat First's evidence that it never signed any agreement to arbitrate the Appellants' Marshall Securities claims. Under these circumstances, the district court had no alternative but to determine whether an agreement to arbitrate existed. Chastain made this clear:
 
 
 15
 If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.
 
 
 16
 Chastain, 957 F.2d at 854 (emphasis in original).
 
 
 17
 The Chastain case involved a securities broker-dealer's motion to compel arbitration based on two customer agreements that were allegedly signed on behalf of, but not by, the customer herself. This Court affirmed the district court's conclusion that the facts were sufficient "to put 'the making of the arbitration agreement ... in issue,' 9 U.S.C. § 4 (1988), thereby requiring the district court to determine the validity of the customer agreements before compelling Chastain to submit her securities claims to arbitration." Id. at 855. The facts of the present case offer an even more compelling basis for reaching this same conclusion, because Wheat First and Appellants had absolutely no relationship at the time of the alleged events that Appellants seek to arbitrate.
 
 
 18
 The Appellants condemn the district court for "attempting to interpret the asset purchase agreement," but the court was required to interpret that document because of the Appellants' argument that the Asset Purchase Agreement made Wheat First the successor in interest to Marshall Securities and Marshall and required it to arbitrate. The Appellants fail to explain how the district court could have decided whether Appellants' argument for arbitration based on the Asset Purchase Agreement had any merit without interpreting that document.
 
 
 19
 Appellants also point to a distinction drawn by the Supreme Court in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and argue that "this is not a case in which Wheat First challenges its contractual assent. Wheat First does not deny that its representative signed the asset purchase agreement, nor that its representative acted with appropriate corporate authority in so doing, nor that Wheat First gave its full and unqualified assent to the terms of the agreement." The Appellants' reliance on Prima Paint is misplaced, because in that case, there was no dispute that the two parties to the litigation had entered into a consulting agreement that contained a "broad" arbitration clause. When a dispute arose, plaintiff Prima Paint sought to rescind the agreement and avoid arbitration by arguing that it had been fraudulently induced to enter the contract. The Supreme Court found that a district court's authority to resolve arbitrability questions is rooted in the distinction between challenges to the contract as a whole and challenges directed exclusively toward the arbitration clause:
 
 
 20
 [I]f the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language [of FAA § 4] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that ... a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.
 
 
 21
 Id. at 403-04, 87 S.Ct. at 1806 (footnote omitted).
 
 
 22
 Unlike Prima Paint and the other cases relied upon by the Appellants,[3] no agreement was ever executed by the parties in this case. In Chastain, this Court found that "Prima Paint has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract never existed at all." Chastain, 957 F.2d at 855 (emphasis in original). As was the case in Chastain, "the trigger of the court's power to compel arbitration in cases like Prima Paint, Coleman,[4] and Haydu[5]--the existence of a presumptively valid arbitration agreement contained within a contract signed by the parties--is entirely absent in this case." Id. (emphasis added). While it is true that Wheat First "cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists," id., on the facts of this case, Wheat First has "substantiate[d] the denial of the contract with enough evidence to make the denial colorable." Id.
 
 
 23
 Appellants cite no cases that support their argument that Wheat First can be compelled to arbitrate even though the parties have executed no agreement to arbitrate. Indeed, the sole case that presents even a remotely similar factual situation held that the district court erred in turning the arbitrability question over to arbitrators. In I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396 (8th Cir.1986), Michigan Sugar and I.S. Joseph signed a contract that included an arbitration clause. I.S. Joseph subsequently assigned its rights under the agreement to Josco Crown International, Ltd. Thereafter, Josco sought to enforce the arbitration clause against Michigan Sugar. The Eighth Circuit reversed the district court's decision to refer the matter to arbitration without first ruling on the validity of the assignment:
 
 
 24
 [A]bsent some indication in the original agreement that the parties at that time provided for assignment of their interests under the agreement or otherwise intended to bind themselves to entities not then in existence, the validity of the assignment must be determined under the common law of contract; there is simply nothing in the agreement which provides for this situation. Referral of this issue to arbitration would require the arbitrator to look outside the agreement to the circumstances of the contract itself and the contract law of the state in order to determine his jurisdiction in the matter. That function is one which is reserved for the court under the [Federal Arbitration] Act.
 
 
 25
 Id. at 400. Similarly, an arbitrator in the present case would be compelled to consider the state contract and successor liability law which controls the Asset Purchase Agreement. The district court correctly concluded that it should not turn this responsibility over to the arbitrators.
 
 
 26
 We hold that the facts of this case adequately call into question whether an arbitration agreement existed between Wheat First and any of the Appellants. Thus, the district court committed no error in deciding the arbitrability question. It had the responsibility to do so.
 
 B. THE MERITS OF THE ARBITRABILITY ISSUE
 
 27
 Having concluded that the district court correctly determined that it, and not an arbitrator, must decide the threshold question of whether an arbitration agreement existed, we must now ascertain whether the court properly held that Wheat First was "not obligated to arbitrate any claims arising out of the trading Defendants conducted through Marshall Securities."
 
 1. The NASD Code Of Arbitration Theory
 
 28
 Appellants raise an issue of first impression in this Circuit. Does Wheat First's membership in the NASD--and its acknowledged obligation to abide by the rules and procedures of that organization--impose on Wheat First the duty to submit to arbitration of the Appellants' claims? The relevant provisions of the NASD's Code of Arbitration Procedure are as follows:
 
 Matters Eligible for Submission
 
 29
 Sec. 1. This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(3) of the By-Laws of the National Association of Securities Dealers, Inc., (the Association) for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association ....
 
 
 30
 (2) between or among members and public customers, or others ....
 
 Required Submission
 
 31
 Sec. 12. (a) Any dispute, claim, or controversy eligible for submission under Part I of this Code between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.
 
 
 32
 The parties agree that these sections contain two prerequisites before an NASD member can be compelled to arbitrate. First, a complaining party must be a "customer" of the NASD member, and second, the "dispute, claim, or controversy" must have arisen "in connection with the business of such member." The parties disagree dramatically on the parameters of each requirement.
 
 
 33
 We begin by noting that at least one of our sister circuits has held that the rules and regulations of self-regulatory organizations such as the NASD "are sufficient in and of themselves to compel arbitration of covered disputes under [FAA] § 3, whether or not they are incorporated in a purchase and sale agreement." Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, 728 F.2d 577, 580 (2d Cir.1984); see also Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co., 711 F.Supp. 605, 608 (S.D.Fla.1989) (Where no written agreement to arbitrate existed between the NASD member and its customer, NASD Code § 12(a) was "binding on Defendants ... and the customer Scobee, an intended third-party beneficiary, has standing to enforce that provision against them."). While this presents a tantalizing question, we leave its resolution for another day because Appellants' argument that Wheat First must submit to arbitration by virtue of its NASD membership can be disposed of on narrower grounds.
 
 
 34
 We move to the first of the two inquiries drawn from sections 1 and 12(a) of the NASD's Code of Arbitration Procedure: were the Appellants "customers" of Wheat First? Appellants contend that because they eventually became customers of Wheat First, this requirement is satisfied. They further argue that "[n]either the date of Appellants' securities transactions, nor the use or non-use of Wheat First's services by any Appellant after the asset purchase, is relevant to whether Appellants may seek arbitration."
 
 
 35
 The parties do not cite, and we have not found, any authority on the issue of when a person or entity must be a "customer" of a self-regulatory organization member in order to qualify for standing under the NASD Code or the rules of similar organizations. The Appellants would obviously prefer a rule that holds that customer status is determined as of the time the arbitration complaint is filed. Wheat First, on the other hand, would prefer that the customer status be determined as of the time of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint.
 
 
 36
 We believe that the rule preferred by Appellants would do significant injustice to the reasonable expectations of NASD members. We cannot imagine that any NASD member would have contemplated that its NASD membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer. The potential for abuse under this scheme is manifestly apparent from the facts of the present case. We therefore hold that customer status for the purposes of the "customer" requirement of NASD Code §§ 1 and 12(a) must be determined as of the time of the events providing the basis for the allegations of fraud. The Appellants were not customers of Wheat First at the time of the allegedly fraudulent Central stock transactions. Thus, they cannot invoke the NASD Code to compel Wheat First to arbitrate. Because we find that the Appellants were not Wheat First customers for purposes of the NASD Code, we do not reach the question of whether the Appellants' claims arose "in connection with the business of" Wheat First, nor do we reach the broader question of whether Wheat First's membership in the NASD is a sufficient basis in itself for compelling arbitration of disputes that are covered by the NASD Code.
 
 2. The Successor In Interest Theory
 
 37
 Appellants also contend that insofar as five of the nine Appellants are concerned, Wheat First is bound to arbitrate as the successor to Marshall Securities under the Asset Purchase Agreement.[6] The district court rejected this contention, holding "that Wheat First is not an assignee of or successor to, the Marshall Securities Customer Agreements." Appellants fail to refer us to any theory or authority which supports their argument.
 
 
 38
 The Asset Purchase Agreement included a choice of law provision which required that the agreement be "interpreted according to the laws of the Commonwealth of Virginia." Virginia follows the "majority" rule for corporate successor liability:
 
 
 39
 Justice Holt ... in speaking of the liability of one corporation which succeeds to the assets of another, quoted as follows:
 
 
 40
 " 'In order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debt; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact.' ..."
 
 
 41
 Pepper v. Dixie Splint Coal Co., 165 Va. 179, 181 S.E. 406, 410 (1935) (citations omitted). Moreover, as one commentator has noted, "[a] contract between the seller and purchaser corporations, with explicit provisions which exclude any liability for the debts and liabilities of the predecessor, weighs against finding that an exception [to the general rule] can be implied." 15 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 7122 (perm. ed. rev. vol. 1990). The Asset Purchase Agreement in this case contained just such provisions.
 
 
 42
 Based on our review of the Asset Purchase Agreement and the record on appeal, we conclude that Appellants have failed to establish any of the four requirements for successor liability subsequent to an asset transfer. We therefore concur in the district court's rejection of what it aptly termed the "tortured construction of the Asset Purchase Agreement" urged by Appellants.
 
 III. CONCLUSION
 
 43
 We affirm the district court's grant of summary judgment on Wheat First's declaratory judgment claim and its denial of Appellants' motion to dismiss or in the alternative for summary judgment.
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Technically, Marshall Securities had no customer accounts. Customers desiring to use Marshall Securities brokerage services were required to establish an account at Broadcort Capital Corporation, a clearing firm that Marshall Securities used to effect trades on behalf of its clients. Appellants claim that there were "three-way customer trading agreements" among Marshall Securities, Broadcort Capital Corporation, and some of the Appellants. The district court assumed for the purposes of its decision that Appellants were correct in asserting that these agreements were binding on Marshall Securities. For purposes of clarity, we make that same assumption
 
 
 [2]
 The district court found that
 [t]he record does not contain Customer Agreements executed by [Appellants] C. Hunter Tison, Laura D. Tison, Ruth Strickland, or Herb Strickland.... By failing to establish that they executed Customer Agreements, Defendants C. Hunter Tison, Laura D. Tison, Ruth Strickland, and Herb Strickland have failed to establish any basis for their contention that Wheat First agreed to arbitrate claims arising in connection with their Marshall Securities trading accounts.
 Appellants do not contest the court's conclusion to the extent it provides that four of the nine Appellants cannot compel Wheat First to arbitrate as a successor in interest without an agreement between these four individuals and Marshall Securities. There were customer agreements between the other five Appellants and Marshall Securities.
 
 
 [3]
 Driscoll v. Smith Barney, Harris, Upham & Co., 815 F.2d 655 (11th Cir.), vacated sub nom. Smith Barney, Harris, Upham & Co. v. Adrian, 484 U.S. 909, 108 S.Ct. 253, 98 L.Ed.2d 211 (1987); Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350 (11th Cir.1986); Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992)
 
 
 [4]
 Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350 (11th Cir.1986)
 
 
 [5]
 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391 (5th Cir. Unit B Feb. 1981)
 
 
 [6]
 Appellants concede that this contention is not available to the four Appellants who failed to establish that they had customer agreements with Marshall Securities. See n. 2, above