**MONY SECURITIES CORPORATION, Plaintiff,**

v.

**Daniel C. VASQUEZ and Suzanne Vasquez, Defendants.**

No.  8:02–CV–1066–T–17TBM.

United States District Court, M.D. Florida, Tampa Division.

Aug. 13, 2002.

Kathy M. Klock, Jonathan B. Butler, Steel, Hector & Davis, West Palm Beach, FL, for plaintiff.

Kalju Nekvasil, Stephen Craig Krosschell, Goodman & Nekvasil, P.A., Clearwater, FL, for defendants.

## *ORDER*

KOVACHEVICH, Chief Judge.

THIS CAUSE comes before the Court for consideration of Mony Securities Corporation's Motion for Preliminary Injunction and Supporting Memorandum of Law (Dkt. No. 5); Defendants' Memorandum of Law in Support of Their Motion to Compel Arbitration and in Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. No. 12); Affidavit of James Gould (Dkt. No. 7); Affidavit of Richard Casolari (Dkt. No. 8); and Defendant's Documents in Support of Their Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. No. 13).

### Background

On April 17, 2002, Defendants, Daniel Vasquez and Suzanne Vasquez (Defendants) filed a Statement of Claim with the National Association of Securities Dealers (NASD), asserting claims against Mutual Service Corporation and Plaintiff, Mony Securities Corporation (Plaintiff), in connection with the Defendants' investment in certain Van Wagoner mutual funds.

In their arbitration complaint, Defendants assert that they purchased the Van Wagoner mutual funds upon the recom-

mendation of Richard B. Casolari (Casolari), a registered representative of Plaintiff at the time. However, both Plaintiff and Casolari maintain that Casolari was acting in his capacity as a partner and principal of his own financial planning firm, Executive Financial Group, at all material times during his dealings with Defendants, and that Executive Financial Group had no affiliation or relationship with Mony. (Gould Aff., pp. 2–3; Casolari Aff., pp. 2–3).

According to the evidence presented to the Court, Casolari met with Defendants in the Fall of 1999 to discuss their financial planning and investments. After this meeting and subsequent meetings, Defendants opened accounts with Van Wagoner Funds and Mutual Service Corporation for the purchase of Van Wagoner mutual funds. There is no dispute that Plaintiff does not offer or sell Van Wagoner mutual funds; and Defendants' purchase of these funds never appeared on Plaintiff's books or records nor did Plaintiff receive any commission, compensation, or profits from Defendants' purchase of the Van Wagoner funds. (Gould Aff., pp. 2–3).

Because Defendants claim that the investments were speculative and excessive transactions that were inconsistent with their investment objectives, Defendants filed an arbitration complaint under the NASD Code of Arbitration Procedures. Now, Plaintiff moves to enjoin Defendants from pursuing their arbitration claims, arguing that Defendants were never customers of Plaintiff and that their claims do not "arise out of or in connection with" Plaintiff's business. Defendants oppose Plaintiff's motion and move to compel arbitration, asserting that Defendants were customers of Plaintiff under NASD Rule 10301. After reviewing the evidence and hearing oral arguments from both parties, the Court finds that Plaintiff is entitled to a preliminary injunction.

## Discussion

■ In determining whether a preliminary injunction should be granted, the Court must look at four factors: 1) whether a substantial likelihood exists that the movant will ultimately prevail on the merits; 2) whether the movant will suffer irreparable injury if the injunction is not issued; 3) whether the threatened injury to the movant outweighs the potential harm to the opposing party; and 4) whether the injunction, if issued, would be adverse to the public interest. *Chase Manhattan Bank v. Dime Savings Bank of New York*, 961 F.Supp. 275, 276 (M.D.Fla. 1997) (quoting *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir.1989)).

The plaintiff has the burden of persuasion as to each of these four factors. Failure to sustain this burden with regard to any one of these elements will cause the motion to be denied. *U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983). The issuance of the injunction is within the discretion of the trial court and is an "extraordinary and drastic remedy" not to be granted unless the movant clearly carries the burden of persuasion on all four factors. *Gibson v. Lee County Sch. Bd.*, 1 F.Supp.2d 1426, 1427 (M.D.Fla.1998) (citing *U.S. v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974))).

## A. Substantial Likelihood on the Merits

■ Under the Federal Arbitration Agreement, parties are provided a federal remedy to compel compliance with an arbitration agreement; however, the FAA does not require parties to arbitrate when they have not agreed to do so. *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478,

109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration [in] any dispute which he has not agreed to submit." *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Here, the parties did not reach any agreement between themselves as to arbitration. Instead, any such "arbitration agreement" would result from Plaintiff's membership in the NASD and its obligation to abide by the NASD Code of Arbitration Procedure.

NASD Rule 10301 provides that,

[a]ny dispute, claim, or controversy *eligible for submission under the Rule 10100 Series* between a customer and a member and/or associated person arising in connection with the business of such a member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of a customer.

NASD Rule 10301(a) (emphasis added). Further, NASD Rule 10101 provides that "any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association" is eligible for arbitration. "First, a complaining party must be a 'customer' of the NASD member, and second, the 'dispute, claim, or controversy' must have arisen 'in connection with the business of such member.'" *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 821 (11th Cir.1993). Here, there is a dispute as to whether Defendants were Plaintiff's customers.

In determining who constitutes a "customer" for the purposes of the NASD Code of Arbitration Procedure, the Code, itself, provides little guidance. In fact, the only direction that the Code provides is found in Rule 0120(g), which provides that a customer "shall not include a dealer or a broker." The courts are split as to whether this definition should be construed broadly or narrowly. In *Wheat, First Securities, Inc. v. Green*, the Eleventh Circuit rejected the expansive interpretation of Rule 0120(g) that would require *anyone* not a broker or dealer to be a customer. 993 F.2d at 821. Rather, as Judge Carnes pointed out, the adoption of this expansive definition

would do significant injustice to the reasonable expectations of the NASD members. We cannot imagine that any NASD member would have contemplated that its NASD membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer.

*Id.* However, the court did not squarely address exactly what the term "customer" encompasses for the purposes of the NASD rules. On the other hand, the Second Circuit has consistently held that actually doing business with an NASD member is not a prerequisite to being a customer of that member for the purpose of the NASD rules. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352 (2d Cir.1995). Courts in this Circuit are split as to what the term "customer" encompasses, as well. *Compare Investors Capital Corp. v. Brown*, 145 F.Supp.2d 1302 (M.D.Fla.2001); *with First Montauk Securities Corp. v. Four Mile Ranch Development Co., Inc.*, 65 F.Supp.2d 1371 (S.D.Fla.1999). However, the Court finds Judge Presnell's opinion in *Investors Capital Corporation v. Brown* persuasive.

In *Investors Capital Corporation*, the defendants invested in securities through Virgil Smith and Angela Straub, prior to the time that Straub and Smith became associated with the Plaintiff. The defen-

dants also repurchased the securities after Smith and Straub became associated with the plaintiff. 145 F.Supp.2d 1302 (M.D.Fla.2001). When the securities turned out to be bad investments, the defendants filed arbitration claims with the NASD against the plaintiff. *Id.* at 1308. The plaintiff then filed suit to enjoin the defendants' arbitration claims on the grounds that the defendants were not "customers" of the plaintiff under the NASD rules. *Id.* Relying on Judge Carnes's opinion in *Wheat, First,* the court held that,

> in joining the NASD, [the Plaintiff] agreed to arbitrate disputes with *its* customers, rather than with the customers of every person associated with [the plaintiff]. The opposite construction of Rule 10301 ... would "do significant injustice to the reasonable expectations of NASD members."

*Id.* (emphasis in original) (quoting *Wheat, First,* 993 F.2d at 820). Because the defendants did not have accounts with the plaintiff or other evidence of a traditional customer relationship with the plaintiff, the court held that the defendants must show that they established an informal business relationship with the plaintiff, or at least attempted to do so. *Id.*

Like the defendants in *Investors Capital Corporation,* here, Defendants invested in mutual funds through a man who was associated with Plaintiff. Further, like the *Investors Capital Corporation* defendants, in the case at hand, Defendants did not have any accounts with Plaintiff, and they failed to present evidence of a traditional customer relationship with Plaintiff. As such, Defendants bear the burden of presenting evidence of an informal business relationship with Plaintiff. This they have failed to do. The undisputed evidence before this Court provides that Defendants never entered into an account agreement with Plaintiff; they never received any account statements or confirmations from Plaintiff; and they never purchased Plaintiff's investment products. (Gould Aff., pp. 2–3). Additionally, the evidence shows that the fund that Defendants purchased was not offered by Plaintiff, and no transactions involving Defendants' purchase of the funds appears in Plaintiff's books or records. Finally, Defendants did not pay Plaintiff any commissions for any mutual fund transactions, and Plaintiff did not receive any compensation, profits, or benefits from Defendants' purchase of the Van Wagoner mutual funds. (Gould Aff., p. 3).

Based on the evidence, it is clear that Defendants were not "customers" of Plaintiff, and, thus, no agreement to arbitrate existed between Plaintiff and Defendant. As such, Plaintiff cannot be compelled to arbitrate Defendants' claims. Therefore, the Court finds that Plaintiff is likely to succeed on the merits of its claim before this Court.

### B. Irreparable Harm

It is well-established that a preliminary injunction cannot be granted absent a showing of irreparable harm. *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989). An injury is irreparable only if it cannot be undone through monetary remedies. *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir.1987) (citing *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir.1983)). This Court has continuously held that irreparable harm is present if a party is compelled to arbitrate a claim absent an agreement between the parties to arbitrate. *Equity Securities Trading Co., Inc. v. Gillan,* 1997 WL 391794 (M.D.Fla.1997); *e.g. Paine-Webber v. Hartmann,* 921 F.2d 507, 515 (3d Cir.1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King,* 804 F.Supp. 1512 (M.D.Fla.1992). Because the Court finds that Defendants were not Plaintiff's customers and that there is no agreement

to arbitrate between Plaintiff and Defendants, the Court finds that forcing Plaintiff to arbitrate claims will cause irreparable harm if a preliminary injunction is not granted.

## C. Potential Harm to Plaintiff Outweighs Harm to Defendant

As explained above, Plaintiff will suffer irreparable harm should Plaintiff be required to submit to arbitration. The harm to Defendants is the cost of litigating whether Plaintiff is required to submit to arbitration of Defendants' claims. Although the Court recognizes the cost of litigation, it will not find that these costs outweigh Plaintiff's substantive right to have the Court determine whether it is subject to arbitration. Moreover, Defendants have named more than just Plaintiff in their arbitration claim and are still able to pursue their claims freely against the other parties; thus, Defendants are not left without relief as to their arbitration claims. Therefore, the Court finds that the balance of harm to Plaintiff outweighs the balance of harm to Defendant if the preliminary injunction is not granted.

## D. Public Interest

Finally, Plaintiff must show that the granting of the preliminary injunction is not contrary to the public interest. In the case at hand, the Court finds that issuing an injunction in the present case would not be contrary to the public interest because it would uphold the rule of law that arbitration is a matter of contract and that parties cannot be forced to arbitrate claims that they did not agree to arbitrate. For the foregoing reasons, the Court finds that Plaintiff's Motion for Preliminary Injunction must be granted.

Finally, the Court recognizes that Defendants' have a pending Motion to Compel; however, because Plaintiff's have not responded yet, the Court will defer ruling on that motion. Accordingly, it is

**ORDERED** that Mony Securities Corporation's Motion for Preliminary Injunction and Supporting Memorandum of Law (Dkt. No. 5) be GRANTED; and Defendants be ENJOINED from arbitrating their claims against Plaintiff until the Court determines whether Plaintiff is compelled to arbitrate this dispute.