**GRUNTAL & CO., INC., Plaintiff,**

v.

**Ronald STEINBERG and Carolyn Steinberg, Defendants.**

Civ. A. No. 93–4323 (AJL).

United States District Court,
D. New Jersey.

Oct. 12, 1993.

Robert J. Kipnees, Greenbaum, Rowe, Smith, Ravin & Davis, Woodbridge, NJ, for plaintiff.

Ronald and Carolyn Steinberg, pro se.

OPINION

LECHNER, District Judge.

This is an action by plaintiff Gruntal & Co., Inc. ("Gruntal") against defendants Ronald Steinberg and Carolyn Steinberg (the "Steinbergs"), for declaratory judgment as to Gruntal's obligation to arbitrate. Jurisdiction is alleged pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and 28 U.S.C. §§ 1331 and 1332.

Currently before the court is the issue, raised by Order to Show Cause entered 29 September 1993 (the "Order to Show Cause"), of whether the court should grant Gruntal a preliminary injunction enjoining arbitration in this matter pending disposition

of the case on the merits.[1] *See* Order to Show Cause at 2. For the reasons set forth below, Gruntal's application for a preliminary injunction against arbitration is granted.

*Facts*

Gruntal is, and has at all relevant times been, a corporation organized and existing under the laws of Delaware, with its principal place of business in New York County, New York. Complaint, filed 29 September 1993 ("Complaint"), ¶ 1. Gruntal is a securities broker-dealer and a member of the National Association of Securities Dealers ("NASD"). Rappaport Cert., ¶ 2. Gruntal maintains a branch office in Fort Lee, New Jersey. Complaint, ¶ 2.

The Steinbergs are individuals residing in Baltimore County, Maryland. It is alleged the Steinbergs are "citizens of the State of Maryland." *Id.,* ¶ 3.

From November 1982 through March 1988, the Steinbergs held a trading account with the securities brokerage firm of Philips, Appel & Walden, Inc. ("Philips") through Philips' office located in Fort Lee, New Jersey (the "Fort Lee Office"). Rappaport Cert., ¶ 2. During that period, Philips had numerous other branch offices.[2] *Id.,* ¶ 3.

On or about 18 April 1988, Gruntal entered into an agreement (the "Asset Purchase Agreement") with Philips by which Gruntal "agreed to purchase certain specified assets of Philips' [Fort Lee Office]." *Id.;* Complaint, Ex. A. The Asset Purchase Agreement transfers to Gruntal "[a]ll right, title and interest of [Philips] in and to the furniture, leasehold improvements, equipment, machinery, supplies and other assets owned by [Philips] which are presently located or used at the [Fort Lee Office]." Complaint, Ex. A, ¶ 1(a).

The Asset Purchase Agreement also transfers to Gruntal the "[g]oodwill, other intangible assets and written information and operating data possessed by [Philips] relating to the retail brokerage business presently conducted by [Philips] at the [Fort Lee] Office. . . ." *Id.,* ¶ 1(b). Gruntal, however, acquires "no rights or interest in or to the name 'Philips, Appel & Walden.'" *Id.*

Also by the Asset Purchase Agreement, Gruntal acquires "any and all security and other deposits with respect to the [l]ease for the [Fort Lee] Office, . . . and all other assets and properties of every kind and description and wherever located, relating to the conduct of the retail brokerage business at the [Fort Lee] Office." *Id.,* ¶ 1(c).

Under the Asset Purchase Agreement, Gruntal "shall not assume any liabilities or obligations of [Philips] of any kind or nature whatsoever, except those liabilities and obligations commencing as of [19 April 1988, the closing date of the Asset Purchase Agreement (the "Closing Date") ] under the [l]ease [for the Fort Lee Office]." *Id.,* ¶ 2. Philips remains responsible for "all obligations, claims, demands, causes of action, proceedings, losses, damages, expenses, liabilities, fines, penalties, deficiencies and costs . . . existing on the Closing Date or arising as a result of or in connection with the business or activities of [Philips] at the [Fort Lee] Office prior to the Closing Date." *Id.*

Gruntal, on the other hand, is liable only for claims "insofar as such [c]laim arises out of or relates to (i) the conduct of [Gruntal's] business or operations at the [Fort Lee] Office after the Closing Date, or (ii) the inaccuracy of any representation or the breach of any warranty, covenant or agreement of [Gruntal] contained in [the Asset Purchase Agreement]." *Id.,* ¶ 11(b).

---

**1.** In response to the Order to Show Cause, Gruntal submitted: Plaintiff's Brief in Support of Application for an Order to Show Cause and Preliminary Injunction (the "Moving Brief"); Certification of David R. Rappaport (the "Rappaport Cert.").

It appears the Steinbergs were served with the Order to Show Cause by personal service on 29 September 1993. *See* Affidavit of Marie E. Goodman, ¶ 2. It further appears copies of the Order to Show Cause were sent to the Steinbergs on 29 September 1993 by overnight mail and by certified mail. *See Id.,* ¶ 3. The Steinbergs' papers in opposition to Gruntal's application for preliminary injunction were due 7 October 1993. *See* Order to Show Cause at 2. A hearing on the Order to Show Cause was scheduled for 9:00 o'clock a.m. on 12 October 1993. To date, the Steinbergs have failed to submit papers or otherwise appear in this matter.

**2.** No further facts are alleged as to the citizenship or operations of Philips.

The Asset Purchase Agreement is to be "governed by and construed in accordance with the laws of the State of New York applicable to contracts performed wholly within such state, except to the extent (if any) such laws may be superseded by Federal laws." *Id.*, ¶ 15(g).

In or about April to May 1993, the Steinbergs initiated two separate arbitration proceedings (collectively, the "Arbitration Proceedings") against Gruntal before the NASD. The Steinbergs commenced the Arbitration Proceedings, which have been assigned NASD Case Numbers 93–01699 and 93–01887, by submitting two statements of claim to the NASD Director of Arbitration.[3] Complaint, Ex. B; Rappaport Cert., ¶ 5. Both these statements of claim relate to the Steinbergs' account with Philips. Complaint, Ex. B.

The first statement of claim, dated 20 April 1993 (the "20 April Statement of Claim") alleges certain improprieties and breaches of duty by Philips brokers Todd Semon and Bob Semon, as well as by Philips itself. *Id.* According to the 20 April Statement of Claim, the alleged breaches of duty occurred between 21 October 1987 and approximately the end of November 1987. *Id.* At that time, both Bob Semon and Todd Semon were employed by Philips. *Id.* The 20 April Statement of Claim alleges that, as of its writing, Todd Semon worked for Gruntal. *Id.* The 20 April Statement of Claim requests damages totalling $44,486.00. *Id.*

The second statement of claim, dated 7 May 1993 (the "7 May Statement of Claim"), alleges certain improprieties and breaches of duty by Bob Semon. *Id.* These breaches were alleged to have occurred between 18 October 1987 and 15 February 1988. *Id.* At that time, Bob Semon was employed by Philips. *Id.* The 7 May Statement of Claim alleges that, as of its writing, both Bob Semon and Todd Semon were employed by Gruntal. *Id.* The 7 May Statement of Claim requests damages totalling $17,300.00. *Id.*

Both the 20 April Statement of Claim and the 7 May Statement of Claim allege that "preliminary" copies thereof were "personally delivered to Michael Pulver, the local attorney for Gruntal." *Id.* According to the 20 April Statement of Claim and the 7 May Statement of Claim, Gruntal did not respond to these communications. *Id.*

Gruntal, however, states that it made clear to both the Steinbergs and the NASD "that Gruntal never entered into any contract or agreement of any nature with the [Steinbergs] to arbitrate any dispute before the NASD, or indeed before any other arbitration forum." Rappaport Cert., ¶ 6. Gruntal states it presented the Asset Purchase Agreement to both the Steinbergs and the NASD, and requested that the arbitration claims be dismissed. *Id.*

According to Gruntal, the Steinbergs persisted in their prosecution of the Arbitration Proceedings against Gruntal. *Id.* The NASD declined to rule on Gruntal's request for dismissal, and referred the question of arbitrability to the arbitration panel. *Id.* Gruntal received notice to this effect on 15 September 1993. *Id.* Gruntal states the NASD has "formally advised all parties that it will be scheduling hearing dates by [5 October 1993]." Moving Brief at 10.

Gruntal filed this action on 29 September 1993. The Complaint seeks "a [d]eclaratory [j]udgment declaring that Gruntal has no obligation to [the Steinbergs] to arbitrate the claims raised by the [Steinbergs] in the Arbitration Proceedings." Complaint, ¶ 21. The Complaint further seeks a preliminary and permanent injunction enjoining the Steinbergs from "pursuing their claims in the Arbitration Proceedings." *Id.*, ¶ 26.

Also on 29 September 1993, Gruntal made application for an order to show cause why a preliminary injunction should not issue, enjoining the Steinbergs from pursuing the Arbitration Proceedings against Gruntal pending the outcome of this case on the merits. The court entered the requested Order to Show Cause on the same date.

---

**3.** It is unclear which of the NASD case numbers corresponds with each of the statements of claim.

*Discussion*

██ In examining requests for preliminary injunctions, federal standards are applied. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir.1989); *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir.1977). As the Third Circuit has stated, even where "the right upon which [a] cause of action is based is state created, Rule 65(a) of the Federal Rules of Civil Procedure contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions." *Instant Air*, 882 F.2d at 799 (quoting *System Operations*, 555 F.2d at 1141).

The Circuit has established that, to prevail on its application for a preliminary injunction, the moving party must show:

(1) the probability of irreparable injury to the moving party in the absence of relief;

(2) the [absence of] a possibility of harm to the non-moving party if relief were granted;

(3) the likelihood of success on the merits; and (4) the public interest [in granting preliminary relief].

*Alessi v. Pennsylvania, Dept. of Pub. Welfare*, 893 F.2d 1444, 1447 (3d Cir.1990); *see also S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir.1992); *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 632 (3d Cir.1992); *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 191–92 (3d Cir.1990); *Instant Air*, 882 F.2d at 800; *Fechter v. HMW Indus., Inc.*, 879 F.2d 1111, 1116 (3d Cir.1989); *Apollo Technologies Corp. v. Centrosphere Industrial Corp.*, 805 F.Supp. 1157, 1191 (D.N.J. 1992); *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F.Supp. 1118, 1132 (D.N.J.1991); *CPC Int'l, Inc. v. Caribe Food Distrib.*, 731 F.Supp. 660, 664 (D.N.J.1990); *Bascom Food Prods. Corp. v. Reese Finer Foods, Inc.*, 715 F.Supp. 616, 624 (D.N.J.1989).

Of these four requirements, the Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir.1990) (quoting *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir.1982)); *see also Instant Air*, 882 F.2d at 800; *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987); *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir.1984).

Significantly, the Circuit has repeatedly stated that a "grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988); *accord Chez Sez III Corp. v. Union*, 945 F.2d 628, 634 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992); *Instant Air*, 882 F.2d at 800; *United States v. Philadelphia*, 644 F.2d 187, 191 n. 1 (3d Cir.1980); *see also Driscoll Potatoes, Inc. v. N.A. Produce Co.*, 765 F.Supp. 174, 176 (D.N.J.1991).

1. *Likelihood of Success on the Merits*

██ Parties seeking injunctive relief must make a preliminary showing that they are likely to succeed on the merits of their claims. This requirement is satisfied if the moving party "make[s] a showing of a reasonable probability, not the certainty, of success on the merits." *SK & F Co. v. Premo Pharmaceutical Labs., Inc.*, 625 F.2d 1055, 1066–67 (3d Cir.1980) (citations omitted). Nevertheless, a preliminary injunction cannot be issued when there are disputed issues of fact. *Hunterdon Transformer Co. v. Cook*, 89–3132, 1990 WL 10342 *2 1990 U.S.Dist. LEXIS 1382 *3–4 (D.N.J. 6 Feb. 1990) (citing *Charles Simkin & Sons, Inc. v. Massiah*, 289 F.2d 26, 29 (3d Cir.1961)); *see also Oxford House–Evergreen v. Plainfield*, 769 F.Supp. 1329, 1342–43 (D.N.J.1991).

Gruntal requests declaratory judgment that it is not obligated to arbitrate the claims at issue in the Arbitration Proceedings. *See* Complaint, ¶ 21. Gruntal's likelihood of success on the merits of the Complaint therefore depends first on whether declaratory relief would be appropriate in this case, and second on whether declaratory judgment is likely to be entered in Gruntal's favor.

### a. *Declaratory Judgement*

■ Section 2201 of United States Code Title 28[4] provides authority for district courts to issue declaratory judgments. Section 2201 does not grant jurisdiction; rather, it provides a mode of relief for aggrieved persons. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Liberty Mutual Insurance Co. v. Insurance Corp. of Ireland, Ltd.*, 693 F.Supp. 340 (W.D.Pa.1988).

■ A declaratory judgment is inappropriate solely to adjudicate past conduct. *Crown Cork & Seal Co., Inc. v. Borden, Inc.*, 779 F.Supp. 33, 35 (E.D.Pa.1991). "The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*" *Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987)) (emphasis in original).

To satisfy the case or controversy requirement,

> an action must present "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned judicial resolution."

*Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir.1992) (quoting *International Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir.1987)). The Third Circuit has further explained: "The fundamental test is whether the plaintiff seeks merely advice or whether a real question of conflicting legal interests is presented for judicial determination." *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3d Cir.1987); *see Global Leasing Inc. v. Henkel Corp.*, 744 F.Supp. 595, 597 (D.N.J. 1990).

If the declaratory judgment is sought to protect against a feared, future event, "the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Salvation Army v. Department of Community Affairs*, 919 F.2d 183, 192 (3d Cir.1990) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)). The determination of whether a particular controversy is sufficiently immediate and real must be made on a case by case basis. *Global Leasing Inc.*, 744 F.Supp. at 597.

Whether to grant relief pursuant to section 2201 is vested in the court's discretion. "Although the threat of legal action may present a real controversy, ... the remedy of a declaratory judgment is discretionary even where a justiciable controversy exists." *Zimmerman*, 834 F.2d at 1170; *see Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 646–47 (3d Cir.1990). A "[c]ourt should refuse to proceed if it finds that a declaratory judgment action will not serve a useful purpose or is otherwise undesirable. ... [A c]ourt must ask whether the requested declaratory judgment will (1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to present action." *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 216 (D.Del.1991).

Turning to the facts at bar, it appears Gruntal is entitled to a declaration its rights concerning arbitration in this matter. Gruntal's submissions establish that two arbitration proceedings against Gruntal are currently pending before the NASD. *See* Rapaport Cert., ¶¶ 5–6; Complaint, Ex. B. By the Arbitration Proceedings, Gruntal is exposed to potential liability exceeding $60,000. *See* Complaint, Ex. B.

---

4. Section 2201 of title 28 provides, in pertinent part:

   In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

   18 U.S.C. § 2201(a).

Moreover, the issue of the arbitrability of the dispute is currently before the NASD arbitration panel. *See* Rappaport Cert., ¶ 6. There is therefore a concrete possibility that the NASD panel will compel Gruntal to arbitrate in the absence of a judicial determination as to arbitrability.

As the Third Circuit has stated, a party reluctant to arbitrate "has a right to a judicial determination of his obligation to arbitrate." *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507 (3d Cir.1990); *see AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ("[T]he question of arbitrability ... is undeniably an issue for judicial determination."); *PaineWebber, Inc. v. Hofmann*, 984 F.2d 1372 (3d Cir.1993) (same; holding plaintiff securities broker-dealer entitled to declaratory judgment as to obligation to arbitrate); *Morristown Daily Record v. Graphic Communications Union, Local 8N*, 832 F.2d 31, 33 (3d Cir.1987) ("Whether a dispute is arbitrable is a question for the court to resolve. Absent the parties' clear expression to the contrary, that threshold question is to be decided by the court, not the arbitrator." (citations omitted)); *Downing v. Merrill Lynch, Pierce, Fenner & Smith*, 725 F.2d 192, 195 (2d Cir. 1984) (plaintiff was "entitled to a declaratory judgement as to whether he had an agreement with [defendant] to arbitrate disputes...."). Gruntal's right to a judicial determination as to the arbitrability of this matter is placed in real and immediate danger by the Arbitration Proceedings.

Under these facts, Gruntal has presented an actual legal controversy which affects it in a concrete manner. *See Armstrong*, 961 F.2d at 410. The threat to Gruntal posed by the pending Arbitration Proceedings is of sufficient immediacy and reality to warrant judicial resolution at this time. *See Salvation Army*, 919 F.2d at 192. Accordingly, it is likely that Gruntal will be entitled a declaration of its rights regarding arbitration.

b. *Gruntal's Obligation to Arbitrate*

The only question that remains with respect to the issue of likelihood of success concerns the probability that Gruntal will be declared free from obligation to arbitrate with the Steinbergs.

■ Arbitrability disputes connected with a transaction involving interstate commerce are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"). *Paine-Webber*, 921 F.2d at 510; *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("Federal law in the terms of the [FAA] governs [the issue of arbitrability] in either state or [F]ederal court."). The transactions at issue in the Arbitration Proceedings were carried out by telephone between the Steinbergs, residents of Maryland, and the Fort Lee Office, located in New Jersey. *See* Complaint, ¶ 3; *id.*, Ex. B. Because the instant dispute is connected with transactions involving interstate commerce, the issue of arbitrability is governed by the FAA. *See PaineWebber*, 921 F.2d at 510.

"In enacting [the FAA], Congress declared a strong national policy favoring arbitration...." *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). "The [FAA] establishes that, as a matter of [F]ederal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–42.

Notwithstanding this policy favoring arbitration, "the FAA does not require parties to arbitrate when they have not agreed to do so...." *Volt Information Sciences v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). As the Supreme Court has stated: "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration [in] any dispute which he has not agreed so to submit." *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418; *see Hofmann*, 984 F.2d at 1381 ("[A]rbitration is a matter of contract, so no party should be forced to arbitrate a claim it never agreed to submit to arbitration."); *Morristown Daily Record*, 832 F.2d at 33 ("[T]he arbitrators derive their authority from the parties' voluntary agreement.").

"Before compelling an unwilling party to arbitrate, [the FAA] requires the court to engage in a limited review to ensure that the dispute is arbitrable—i.e., *that a valid agreement to arbitrate exists between the parties* and that the specific dispute falls within the substantive scope of that agreement.... If a court determines that a valid arbitration agreement does not exist ... it is obliged to enjoin arbitration." *PaineWebber,* 921 F.2d at 511 (emphasis supplied).

Turning to the facts at bar, it appears Gruntal is not a party to any contract with the Steinbergs, much more a contract concerning arbitration. *See* Rappaport Cert., ¶ 6. Indeed, there is no indication that Gruntal conducted any business with the Steinbergs. *See id.*

It appears the Steinbergs maintained accounts and conducted business with Philips. However, the Asset Purchase Agreement expressly excludes Gruntal from any of Philips' obligations arising out of the actions of Philips prior to 19 April 1988. *See* Complaint, Ex. A, ¶ 2. It appears the transactions at issue in the Arbitration Proceedings took place, in their entireties, at least two months before 19 April 1988. *See Id.,* Ex. B. Therefore, under the Asset Purchase Agreement, it appears Gruntal is not liable for any of Philips' obligations, to arbitrate or otherwise, with respect to the events at issue in the Arbitration Proceedings.

The only discernible basis for a contractual obligation to arbitrate on Gruntal's part is Gruntal's membership in the NASD. *See* Rappaport Cert., ¶ 2. The rules of the NASD, by which all members of the NASD must abide, contain a Code of Arbitration Procedure. The NASD Code of Arbitration Procedure states in relevant part:

Sec. 1. This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD] ....

(2) between or among members and public customers, or others....

Sec. 12(a) Any dispute, claim or controversy eligible for submission under Part I of this Code between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this code....

NASD Code of Arbitration Procedure, *reprinted in* NASD Manual (CCH) 3711, 3713.

It is recognized that the rules and regulations of self regulatory organizations such as the NASD "are sufficient in and of themselves to compel arbitration of *covered disputes* ..., whether or not they are incorporated in a purchase or sale agreement." *Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank, N.A.,* 728 F.2d 577, 580 (2d Cir.1984) (emphasis added) (addressing arbitration rules of New York Stock Exchange); *see Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.,* 819 F.2d 400, 406 (3d Cir.1987) (Customer of broker-dealer "can demand arbitration of its disputes with [broker-dealer] by virtue of § 12(a) [of the NASD Code of Arbitration Procedure], and [broker dealer] is compelled to submit even absent a specific contractual arbitration undertaking directly with [customer]."); *Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co.,* 711 F.Supp. 605, 608 (S.D.Fla.1989) (same). Even so, in order for Gruntal's NASD membership to provide a basis to compel arbitration here, the instant dispute must be covered by the NASD Code of Arbitration Procedure. *See Paine, Webber,* 728 F.2d at 580.

The Eleventh Circuit addressed this specific issue in *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814 (11th Cir.1993). In *Wheat,* the plaintiff, a broker-dealer with membership in NASD, filed an action for a declaratory judgment that it was not obligated to arbitrate with the defendants before the NASD. The defendants were investors who held accounts with a securities brokerage firm known as Marshall Securities ("Marshall") from 1984 through 1989. *See id.* at 815.

In January of 1990, the defendants brought arbitration proceedings against the plaintiff and Marshall before the NASD. The defendants alleged that Marshall, through one of its employee broker-dealers,

made certain material misrepresentations to the defendants in connection with purchases of certain stock. *See id.*

"Well after the allegedly fraudulent ... stock transactions occurred," the plaintiffs entered into an "Asset Purchase Agreement" with Marshall. *Id.* at 816. Under that asset purchase agreement, the plaintiffs "expressly did not 'assume any liability, known or unknown, fixed or contingent, of [Marshal], except for [Marshall's] liabilities and obligations under the Contracts' that were specified in an exhibit to the agreement." *Id.* The defendants' customer agreements with Marshall were not included among these "Contracts." *Id.*

The district court granted the plaintiff's request for declaratory relief, holding that the plaintiff was not obligated to arbitrate any claims arising out of trading the defendants conducted through their accounts with Marshall. *Id.* The Eleventh Circuit affirmed.

In so holding, the Eleventh Circuit rejected the defendants' argument that the plaintiff's membership in the NASD compelled it to arbitrate with the defendants. Noting Sections 1 and 12 of the NASD Code of Arbitration Procedure, the court stated that "these sections contain two prerequisites before an NASD member can be compelled to arbitrate. First, a complaining party must be a 'customer' of the NASD member, and second, the 'dispute, claim or controversy' must have arisen 'in connection with the business of such member.'" *Id.* at 820; *cf. Patten Securities,* 819 F.2d at 406 (NASD Code of Arbitration Procedure § 12(a) provided basis for arbitration because claimant was "customer" of broker dealer).

Applying the first of these prerequisites, the court held that the defendants were not customers of the plaintiffs for the purposes of the NASD Code of Arbitration Procedure. The court stated: "[w]e cannot imagine that any NASD member would have contemplated that its NASD membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member...." *Wheat,* 993 F.2d at 820. The court found, on this basis, that the plaintiff's

membership in the NASD did not compel it to arbitrate with the defendants. *Id.*

The Eleventh Circuit's rationale in *Wheat* is directly applicable to the instant controversy. Gruntal did not assume obligations to any of Philips' customers by the Asset Purchase Agreement, and could not have contemplated that its membership in the NASD would compel it to assume such obligations. It appears the Steinbergs were not and are not customers of Gruntal for the purposes of the NASD Code of Arbitration Procedure by virtue of their having been customers of Philips. *See id.* Moreover, it also appears the claims at issue in the Arbitration Proceedings did not arise "in connection with the business of" Gruntal, as is required by the NASD Code of Arbitration Procedure. *See* Complaint, Ex. B.; *Wheat,* 993 F.2d at 820. Therefore, Gruntal's membership in the NASD does not compel it to arbitrate with the Steinbergs on the claims presented in the Arbitration Proceedings.

There appears to be no contractual basis to support an obligation on Gruntal's part to arbitrate with the Steinbergs. Accordingly, it is reasonably probable that Gruntal will be declared free of any obligation to arbitrate with the Steinbergs on the claims raised in the Arbitration Proceedings. Gruntal has therefore shown sufficient likelihood of success on the merits of the Complaint to support a preliminary injunction against arbitration in this matter.

### 2. *Irreparable Injury*

In order to demonstrate irreparable injury, the moving party "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air,* 882 F.2d at 801 (emphasis added) (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982); *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 3569 & n. 9 (3d Cir.1980)).

The Supreme Court, in speaking to the irreparable injury requirement, has stated:

[I]t seems clear that the temporary loss of income, ultimately to be recovered, does

not constitute irreparable injury.... "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Sampson v. Murray,* 415 U.S. 61, 90, 94, 94 S.Ct. 937, 953, 954, 39 L.Ed.2d 166 (1974) (emphasis original) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.D.C.1958); quoted in *Instant Air,* 882 F.2d at 801).

The Circuit has toed a similarly strict line on what constitutes irreparable injury. In *Frank's GMC,* the court stated that "[t]he availability of adequate monetary damages belies a claim of irreparable injury." 847 F.2d at 102; *accord Morton,* 822 F.2d at 372. In *Instant Air,* the court stated: "[W]e have never upheld an injunction where the claimed injury constituted a loss of money or loss capable of recoupment in a proper action at law." 882 F.2d at 801 (quoting *Arthur Treacher's,* 689 F.2d at 1145); *see also Morton,* 822 F.2d at 372 (no injunction to prevent termination of plaintiff's employment despite fact that significant cash flow problems and financial distress could follow).

Finally, the Circuit has indicated that "[e]stablishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury." *Hoxworth,* 903 F.2d at 205 (quoting *Ecri v. McGraw–Hill, Inc.,* 809 F.2d 223, 225 (3d Cir.1987)).

Extensive analysis of the irreparable injury requirement in this case is obviated by the Third Circuit's decision in *PaineWebber,* 921 F.2d 507. In *PaineWebber,* the plaintiff, a brokerage firm, moved for a preliminary injunction to prevent arbitration of a dispute involving the defendants, who were the plaintiff's clients. The issue of the arbitrability of the dispute was put before the arbitration panel. *See Id.* at 514. The district court granted the plaintiff's motion and preliminarily enjoined the arbitration proceedings. The Circuit affirmed.

Addressing the issue of irreparable harm, the Circuit stated:

[W]e think it obvious that the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority.

*Id.* at 515.

Turning to the facts at bar, the issue of the arbitrability of the dispute between the Steinbergs and Gruntal is presently before the NASD arbitration panel. Rappaport Cert., ¶ 6. Gruntal has not agreed to allow the NASD panel to determine the issue of arbitrability. Indeed, it appears Gruntal has not agreed to arbitration of any sort with respect to the claims raised in the Arbitration Proceedings. *See Id.* Compelling Gruntal to appear in the Arbitration Proceedings under these facts would constitute *per se* irreparable harm for the purposes of the preliminary injunction analysis. *See Paine-Webber,* 921 F.2d at 515.

### 3. Balance of Hardships

█ In deciding whether injunctive relief is appropriate, the hardships to the respective parties must be balanced. *Opticians Ass'n,* 920 F.2d at 197; *Frank's GMC,* 847 F.2d at 102. The purpose behind this balancing is to ensure that the issuance of an injunction would not harm the defendant more than a denial would harm the plaintiff. *Opticians Ass'n,* 920 F.2d at 197; *Ecri,* 809 F.2d at 226.

Gruntal correctly points out that it is not involved in the events at issue in the Arbitration Proceedings. *See* Moving Brief at 10; Rappaport Cert. ¶ 5. Moreover, it appears Gruntal is insulated from liability for Philips' actions in connection with those events. *See* Complaint, Ex. A, ¶ 2. It appears therefore that any recovery by the Steinbergs in the Arbitration Proceedings would lie against Philips, and not against Gruntal. Under these circumstances, it does not appear the Steinbergs will be harmed by the enjoining of arbitration with respect to Gruntal.

**94**

### 4. *Public Interest*

The final consideration in the preliminary injunction analysis is whether the issuance of a preliminary injunction furthers the public interest. *Opticians Ass'n*, 920 F.2d at 197. The Third Circuit has recognized as a valuable judicial policy the principle that "a party cannot be compelled to arbitrate the threshold 'dispute,' as it were, of whether the underlying dispute is itself arbitrable." *Paine-Webber*, 921 F.2d at 514. Therefore, the public interest, to the extent it is relevant here, favors granting Gruntal's application for preliminary injunction.

Gruntal has satisfied the requirements for the grant of a preliminary injunction. Accordingly, pending the final adjudication of this matter on the merits, the Steinbergs are enjoined from pursuing, through themselves or their agents or assigns, arbitration against Gruntal with respect to the claims raised in the Arbitration Proceedings.

### Conclusion

For the reasons set forth above, the Steinbergs are enjoined from pursuing the Arbitration Proceedings against Gruntal pending the adjudication of this matter on the merits.